Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISTAN HURD, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-685 |
| *Plaintiff*, | CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL |
| v. | |
| G.SKILL INTERNATIONAL ENTERPRISE CO., LTD., AND G.SKILL USA, INC. | |
| *Defendants*. | |

# **Table of Contents**

L.R. 8-1 Jurisdiction Statement .................................................................. 1

Introduction ................................................................................................ 1

The Parties ................................................................................................. 1

Jurisdiction and Venue .............................................................................. 2

Pleaded Facts ............................................................................................. 2

    I.    G.Skill's ads promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified. ..................................................................................... 2

    II.    In reality, trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably .............................................. 6

        A.    Attempting to obtain the advertised speeds requires altering PC firmware. ........................................................................................ 7

        B.    There is a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed................... 8

    III.    G.Skill's ads are misleading to reasonable consumers. ........................ 10

    IV.    Plaintiff was misled and harmed by G.Skill's advertisements. ............ 11

Class Action Facts..................................................................................... 12

Causes of Action ....................................................................................... 15

Jury Demand .............................................................................................. 26

Prayer for Relief........................................................................................ 26

Class Action Complaint                                                                    Case No.

### L.R. 8-1 Jurisdiction Statement

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

### Introduction

2.      G.Skill sells premium, high-speed computer memory.  Its typical customers are computer gamers interested in improving the performance of their games.

3.      The most important measure of memory performance is the speed at which it transfers data (measured in megahertz, or MHz).  G.Skill advertises that its memory runs at specific, high MHz speeds (e.g., "3600 MHz").  G.Skill's ads do not qualify these representations.

4.      In reality, trying to get the advertised speed requires altering the PC firmware to attempt to "overclock" the memory and make it run at higher than standard speeds.  And when overclocking, there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.

5.      G.Skill has made tens of millions of dollars (or more) by deceptively advertising its high-speed memory products.

6.      Plaintiff brings this case individually and for all consumers who purchased G.Skill's high-speed memory products in the United States.

### The Parties

7.      Plaintiff Tristan Hurd is a citizen of California (domiciled in Lake Hughes, California).  The proposed class includes citizens of most (or potentially all) states.

1

Class Action Complaint                                                           Case No.

8.      Defendant G.Skill International Enterprise Co., Ltd. ("G.Skill International") is a foreign citizen.  It is a Taiwanese company with its principal place of business in Taiwan.

9.      Defendant G.Skill USA, Inc. ("G.Skill USA") is a citizen of California.   It is incorporated in California, with its principal place of business in Walnut, California.

## Jurisdiction and Venue

10.     This Court has personal jurisdiction over Defendants because this cause of action arises from, and has a substantial connection to, Defendants' contacts with California.  In particular, Defendants purposefully marketed and sold G.Skill memory products in California, including to Plaintiff.  In addition, G.Skill USA is a California corporation, with its principal place of business in Walnut, California.

11.     Because G. Skill International is not a U.S. resident, venue is proper in any District.  *See* 28 U.S.C. § 1391(c)(3).  Venue is proper for G.Skill USA under U.S.C. § 1391(b)(1) & (2) because G.Skill USA resides in this District and because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including G.Skill's sale of memory to Plaintiff.

## Pleaded Facts

**I.      G.Skill's ads promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified.**

12.     G.Skill markets and sells high-end computer components and accessories.  G.Skill markets its products to computer gamers who want to improve the performance of their games.

13.     One of G.Skill's flagship products is its high-speed computer memory (RAM) sticks, including its Trident, Aegis, and Ripjaws lines (collectively,

Class Action Complaint                                                    Case No.

"G.Skill High-Speed Memory").  These memory sticks can be plugged into the memory slots of a PC.



14.    G.Skill's ads highlight the specific speeds of its High-Speed Memory. Memory speed means how fast the memory transfers data, and it is measured in units of Megahertz (MHz).  The more MHz, the purportedly faster the memory and the higher the performance.

15.    G.Skill's packaging and advertisements state that its memory runs at specific, high speeds.  For example, here is an Amazon listing for Trident Z RGB "3000 MHz" memory, from the "G.Skill Store" on Amazon: [1]



---

[1] https://www.amazon.com/G-Skill-TridentZ-288-Pin-Desktop-F4-3000C16D-32GTZR/dp/B07KQP3XQB/ref=sr_1_8?c=ts&keywords=Computer+Memory&qid=1640112940&refinements=p_89%3AG.Skill&s=pc&sr=1-8&ts_id=172500

Class Action Complaint                                          Case No.

*Red annotations added*

16.    And here is a Newegg listing for Ripjaws "3600 MHz" memory:[2]



17.    G.Skill's other ads make comparable promises of speed and reliability.  For example:



*From Newegg* [3]



*From Amazon* [4]

---

[2] https://www.newegg.com/g-skill-32gb-288-pin-ddr4-sdram/p/N82E16820232907
[3] https://www.newegg.com/g-skill-32gb-288-pin-ddr4-sdram/p/N82E16820232091
[4] https://www.amazon.com/G-Skill-TridentZ-16GB-25600-F4-3200C16D-16GTZR/dp/B01MTDEYHU

Class Action Complaint                                        Case No.

18.     The examples above are representative of G.Skill's advertising.  In
sum, G.Skill's ads promise specific high-speeds and reliability and are pervasively
disseminated across purchasing channels.  Because these promises are pervasively
disseminated, every consumer purchasing G.Skill High-Speed Memory encounters
substantially similar or identical promises.

19.     To a reasonable consumer that buys G.Skill High-Speed Memory,
G.Skill's ads indicate that the memory will run at the stated speed out of the box,
and that it will do so reliably across platforms.

20.     This is the plain meaning of G.Skill's ads, which (a) state the speed
unequivocally and without qualification and (b) promise reliability across
platforms (AMD and Intel).

21.     This is also what consumers reasonably understand memory speeds to
indicate, based on typical memory purchases.  Typically, consumers buy memory
as part of a complete computer purchase from a PC maker like Dell or HP.  And
when the PC arrives, the memory is already running at the stated speed.  In
addition, when a consumer buys aftermarket memory (e.g., to add more memory or
replace broken memory) it is typical to purchase common, standard speed memory
(e.g., memory that runs at the 2133 MHz standard), which runs at the stated speed
reliably and out of the box.  For example, a consumer can buy 2133 MHz memory
from Dell that runs at this standard speed out of the box.

22.     A reasonable consumer would also expect that, if there were
important qualifications about the promised speed, G.Skill would make this clear.
For example, if G.Skill's High-Speed Memory was only able to operate at the
advertised speed after altering the computer's firmware, this is something a
reasonable consumer would want to know, and expect G.Skill to clearly disclose.
And if there is a substantial risk that the memory will not run at the advertised
speed, or will not run stably, this is something a reasonable consumer would also

5

want to know, and expect G.Skill to clearly disclose.  But as illustrated above, G.Skill's advertisements contain no such qualifications.

**II.    In reality, trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.**

23.    In reality, G.Skill's memory sticks do not operate at the advertised speed when plugged into a computer.  Rather, they operate at a lower speed.  For example, the default speed for Trident Z Neo "3800 MHz" memory is in fact 2133 MHz.  If a consumer buys these memory sticks, expecting to achieve the advertised speed, and plugs them into his or her computer without doing anything else, the memory only runs at 2133 MHz.

24.    G.Skill's ads do not alert consumers that the stick will operate at a lower speed than advertised out of the box.  Nor is a difference in speed clearly observable when performing most computer functions.  Rather, users must go into their computer settings to find out what RAM speed their computer is running.  The result is that a user can purchase G.Skill High-Speed Memory, plug it into a computer, and get the same speed they were getting before, without ever knowing the difference.

25.    If a consumer even realizes that their memory is running slow (compared to the advertised speed), they must attempt to "overclock" it to achieve the advertised speed.  Overclocking involves pushing computer components beyond their standard operating speeds.

26.    As described next, overclocking memory requires altering the PC's firmware.  And it carries a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.  But G.Skill never discloses this on the packaging or its ads.

6

**A.    Attempting to obtain the advertised speeds requires altering PC firmware.**

27.    Overclocking memory requires adjusting a computer's Basic Input/Output System (BIOS) or Unified Extensible Firmware Interface (UEFI) settings.  A computer's BIOS or UEFI is the program that governs the fundamental mechanisms by which the computer turns on and operates.  On many computers, accessing the BIOS or UEFI settings involves restarting the computer and repeatedly pressing a designated keyboard button (which varies by computer brand) during a brief window of time after the computer turns on.

28.    Once the user has accessed the BIOS or UEFI settings, the user must locate the setting for the RAM frequency (its MHz speed) and increase the RAM frequency to the desired speed.

29.    In addition to changing the frequency, overclocking often requires changing multiple memory "timing" settings, which interact with the frequency settings.

30.    Also, because running the RAM at higher speeds requires additional power, overclocking can also require increasing the voltage settings.

31.    On certain Intel computer systems, the BIOS has an "XMP" (Extreme Memory Profile) setting that will set the various memory parameters to predetermined profiles.  While this simplifies configuration, it still requires altering the BIOS, and these settings are only available on certain motherboards.

32.    Altering the computer's firmware in this way poses material risks to the functionality of the computer system, as well as to the memory sticks themselves.  Some examples include reducing computer system stability, causing crashes, overheating system components, and causing system components to degrade more quickly.

33.    Because of the risks associated with overclocking, overclocking can void warranties on important components of the computer. Intel's website states,

"[a]ltering clock frequency or voltage may void any product warranties and reduce stability, security, performance, and life of the processor and other components." [5]

**B.    There is a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.**

34.    There is a substantial risk that the user's particular combination of other computer components (like the processor and other motherboard components) simply cannot support overclocking at the advertised speed.  Memory interacts with other components in complex ways and overclocking is sensitive to this.  If the combination of components is not optimal, the memory will not run at the advertised speed or it will run unstably (causing software glitches or system crashes).

35.    Beyond this, there is a substantial risk that a reasonable user will not be able to find the precise combination of frequency, timing, and voltage needed to achieve the advertised speeds.

36.    This is why online forums are replete with complaints from G.Skill users that they cannot achieve the advertised speeds.  Here are some representative complaints:

> Can't get advertised 3000MHz on my DDR4 G.Skill RAM. … I went into many different tutorials online and can't seem to find how to get the desired RAM MHz, I was able to go from 2133 to 2666 without it failing to boot. I don't really know what the recommended voltage is for the ram or if I need to overclock my motherboard as well. [6]

> I've tried setting the [Ripjaws] ram speed to 3200mhz manually in my bios, but then my pc will crash and I will get a bsod [blue screen of death, i.e., a crash]. It will crash unless it is at 2133 mhz, which is a horrendous speed for my R3 2200g. … I tried both the first 1 [XMP profile] and the 2nd. From what I understand they essentially set the ram speed to its proper speed? It still crashes.[7]

> The RAM I use on my computer is G.Skill Ripjaws V 16 2x8GB DDR4 3600 CL18. Just realized that this whole time my RAM was running at 2133MHz, I changed the XMP

---

[5] https://www.intel.com/content/www/us/en/support/articles/000005494/processors.html
[6] https://www.reddit.com/r/buildapc/comments/axe2g8/cant_get_advertised_3000mhz_on_my_ddr4_gskill_ram/
[7] https://www.reddit.com/r/buildapc/comments/catamz/g_skill_3200_mhz_ripjaws_v_ram_not_working_at/

Class Action Complaint                                                      Case No.

profile to Profile 2 which changed it to 3600MHz and my computer crashes anytime I try to exit my BIOS.[8]

The first [Trident 3200 MHz] kit I got I figured it was defective and exchanged it for another kit. I found out it was doing the same thing. If I set the speed to what its rated for then the computer will crash about 3-5 min into any game. Am I missing something here?[9]

37.    A response post illustrates the technical morass of attempting to get the advertised speed:

You may need to loosen timings, increase voltage, or manually set the timings instead of using the XMP settings. I'd bump voltage 0.05v to start.[10]

38.    On G. Skill's online forum, a G.Skill employee admits that, while the "RAM is guaranteed at the rated specs," actually achieving the advertised speed is a "silicon lottery."  This employee states that you "can't expect the max of the platform" (i.e., the advertised speed) to be "easy to set up."[11]  But this is not something that G. Skill discloses to consumers *before* they spend hundreds of dollars on G.Skill High-Speed Memory, and a reasonable consumer is not digging through posts on the G.Skill forum before purchasing.

39.    Like other online forms, G.Skill's own forum also has customer complaints about its false advertising.  For example:

I've got GSkill Ripjaws V DDR4-3200-CL16-18-18-38 or F4-3200C16D-32GVK or something.. runs at 1.35v I believe... Anyway, in Windows Task Manager performance it says it's only running at 2133 MHz. … I also wonder why GSkill never though to include a giant sticker on the box with a pamphlet inside saying, "YOU'VE GOT TO CHANGE BIOS SETTINGS FOR THIS TO ACTUALLY GET YOU WHAT YOU PAID FOR!!!" **[11]**

40.    Then, after this consumer spent many hours following the forum advice and trying to get the memory to work, their system crashed: "here we are

---

[8] https://www.reddit.com/r/buildapc/comments/kh2t1m/ram_not_running_at_full_speed_when_setting_axmp/
[9] https://www.reddit.com/r/overclocking/comments/a9vkzt/trident_z_rgb_unstable_at_rated_speeds_3200mhz/
[10] https://www.reddit.com/r/overclocking/comments/a9vkzt/trident_z_rgb_unstable_at_rated_speeds_3200mhz/
[11] https://www.gskill.us/forum/forum/product-discussion/ddr4/13135-trouble-with-f4-4133c19d-16gtzkw-booting-to-windows-on-z270

9

nearly 36 hours later... it booted fine, ran great for a LONG time (over 12 hours). Today I went to boot up..... nothing." [12]

### III.   G.Skill's ads are misleading to reasonable consumers.

41.   As detailed above, G.Skill's packaging and ads promise specific high speeds and reliability, and omit any warning about the risks and realities of overclocking.  And this is not information that a reasonable G.Skill customer already knows.  A typical purchaser of G.Skill High-Speed Memory is not a computer expert (much less a memory overclocking expert).  Rather, a typical purchaser of G.Skill High-Speed Memory is a regular consumer simply looking to improve the performance of their computer games or media software.

42.   If G.Skill wanted to be truthful in its packaging and advertising, G.Skill would make clear that the speeds it is listing are the *maximum* speed that the memory can run.  For example, G.Skill could state that its memory can run "at maximum speed of 4666 MHz."

43.   In addition, if G.Skill wanted to be truthful, it would also clearly and prominently warn consumers that achieving the advertised speed requires altering the PC firmware, and that it may not be possible to stably achieve the advertised speed.

44.   G.Skill's packaging and ads, however, make no such qualifications and thus made material misstatements and omissions.

45.   In addition, G.Skill failed to disclose to consumers that the stated speed was not the default speed, that they would have to make various complex changes to their PC firmware to  achieve the stated speed, and that even if they made those complex changes, there is a substantial chance that they will not be able to stably achieved the advertised speed.

---

[12] https://www.gskill.us/forum/forum/general-discussion/general-discussion-aa/163949-my-3200-mhz-ram-only-runs-at-2133-mhz

Class Action Complaint                                                Case No.

46.    The omissions were material, because a reasonable consumer would attach importance to the truth or falsity of those omissions in deciding whether to purchase High-Speed Memory.  As G.Skill's marketing campaign reflects, speed is a primary factor in determining the price a consumer will pay for memory and in driving purchase decisions.  G.Skill could have and should have clearly revealed this qualifying information, on both the product packaging and in its ads.  And G.Skill could have, and should have, clearly put these qualifications in close proximity to its affirmative representations about speed.  While this would drive down the price that G.Skill could charge, it would be truthful.

47.    G.Skill knows the truth about overclocking, and knows what its packaging and ads say (and omit).  Thus, G.Skill knew that its statements were false and misleading to reasonable consumers and G.Skill intended consumers to rely on its false and misleading statements when purchasing High-Speed Memory.

**IV.    Plaintiff was misled and harmed by G.Skill's advertisements.**

48.    In December of 2020, Mr. Hurd purchased 64GB of "3600 MHz" G.Skill Trident Z Neo memory, from Amazon.  He paid about $340 for the RAM. Plaintiff saw and relied upon G.Skill's claims that the memory would run reliably at 3600 MHz.

49.    Plaintiff attempted to alter his BIOS to achieve the advertised speed, but his system crashed at any speed above 3200 MHz.  He bought a new motherboard to try to make the memory work, but the memory still caused crashes at the advertised speed.

50.    Had Mr. Hurd known the truth about the memory, he would not have bought it or would not have paid the same price for it.

51.    Plaintiff would purchase G.Skill High-Speed Memory again if it was actually sold as advertised.  Plaintiff, however, faces an imminent threat of harm because Plaintiff will not be able to rely on G.Skill's ads in the future, and thus will not be able to purchase the products even if they were sold as advertised.

Class Action Complaint                                                    Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Class Action Facts**

**The proposed class and subclasses.**

52.    Plaintiff brings this case on behalf of the proposed **Nationwide Class** of: All individuals who purchased G.Skill High Speed Memory in the United States, within the governing statute of limitations period.

53.    It is appropriate to include all such individuals in the same class.  All such individuals were presented with substantially similar misrepresentations and omissions by G.Skill.  All proposed class members allege the same violations of law and seek the same relief.  There are no conflicts of interest among the proposed class members.

54.    For certain claims, Plaintiff brings those claims on behalf of a subclass of those consumers who live in the identified states (the "**Consumer Protection Subclass**").

55.    For certain claims, Plaintiff brings those claims on behalf a subclass of those consumers who, like Plaintiff, live in California (the "**California Subclass**").

56.    The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6)  the legal representatives, successors, and assigns of any such excluded persons.

Class Action Complaint                                                      Case No.

**Numerosity**

57.     The proposed Class contains members so numerous that separate joinder of each member of the class is impractical.  Based on G.Skill's sales, there are at least hundreds of thousands of proposed class members.

**Commonality**

58.     There are questions of law and fact common to the proposed class. Common questions of law and fact include:

- Whether G.Skill's advertisements were unfair, deceptive, false, and/or misleading;
- Whether G.Skill breached express warranties;
- Damages needed to compensate Plaintiff and the proposed class.

**Typicality**

59.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased one of G.Skill's High-Speed Memory products.  And like the proposed class, Plaintiff was presented with and relied upon substantially similar advertising by G.Skill.  Plaintiff alleges the same violations of law and seeks the same relief as the proposed class.

**Adequacy**

60.     Plaintiff will fairly and adequately protect the interests of the proposed class.  Plaintiff's interests are aligned with the interests of the proposed class members: Plaintiff seeks damages and other relief for G.Skill's alleged wrongs.  Plaintiff is represented by experienced class action counsel who are prepared to vigorously litigate this case through judgment and appeal.  There are no conflicts of interest between Plaintiff and the class.

**Final injunctive relief is appropriate respecting the class as a whole.**

61.     G.Skill has sold memory sticks through deceptive advertising on grounds that apply generally to the class.  Accordingly, final injunctive relief

Class Action Complaint                                                                    Case No.

prohibiting G.Skill from engaging in such conduct would appropriately apply class-wide.

### Predominance and Superiority

62.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that the same G.Skill ad is found to be deceptive with respect to some proposed class members, but not others.

63.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  Each class member's claims arise out of the same conduct by Defendant.  And a core liability question is common: whether G.Skill's advertisements were deceptive.

64.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands (or millions) of similar, individual claims in separate lawsuits.

### Ascertainability

65.    Class membership can be objectively determined based on whether they bought G.Skill High Speed Memory.  And the number and identity of class members can be determined through G.Skill's records, the records of its retailers, and appropriate methods of public notice.

14

Class Action Complaint                                                                Case No.

# Causes of Action

## Count I: Violations of State Consumer Protection Acts

### (on behalf of Plaintiff and the Consumer Protection Subclass)

66.    Plaintiff incorporates by reference each and every factual allegation set forth above.

67.    This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |

| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
|---|---|
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |

16

| Vermont | 9 V.S.A. § 2451, and the following. |
|---|---|
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

68.    Each of these statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sale of goods or services to consumers.  G.Skill's misleading ads violate each statute's prohibitions.

69.    G.Skill's misrepresentations were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on G.Skill's misrepresentations and omissions when purchasing High-Speed Memory.

70.    G.Skill is aware of the truth about overclocking (as alleged in detail above) and was therefore aware that its ads were misleading to reasonable consumers.

71.    For applicable statutes, Plaintiff is contemporaneously providing written notice and a demand for correction (together with notice of certain other violations alleged in this Complaint).  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

72.    G.Skill had a duty to disclose material, qualifying information because: (1) G.Skill affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) G.Skill had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not

17

readily apparent at the time of purchase.  G.Skill was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

73.     G.Skill's misrepresentations and omissions were a substantial factor in Plaintiff and class members' purchase decision.

74.     Plaintiff and class members were injured as a direct and proximate result of G.Skill's conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about G.Skill's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to G.Skill's misrepresentations and omissions.

## Count II: Violation of California Unfair Competition Law (UCL)
### (on behalf of Plaintiff and the California Subclass)

75.     Plaintiff incorporates by reference each and every factual allegation set forth above.

76.     As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff brings this UCL claim on behalf of himself and members of the California Subclass.

77.     G.Skill violated California's Unfair Competition Law by engaging in unlawful, fraudulent, and unfair conduct (violating each of the three UCL prongs).

### The Unlawful Prong

78.     G.Skill engaged in unlawful conduct by violating the CLRA and FAL, and other applicable law as alleged in this Complaint.

### The Fraudulent Prong

79.     G.Skill's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  G.Skill had a duty to disclose material, qualifying information because: (1) G.Skill affirmatively made partial representations about the speed of

18

its memory, but also suppressed, concealed, or did not disclose facts that qualify

those representations; and (2) G.Skill had exclusive knowledge of overclocking

facts not known to the consumer, as alleged above, and it was difficult to discover

that information because it involved complex technical information that was not

readily apparent at the time of purchase. G.Skill was in a superior position to

know this information, as the maker and seller of its High-Speed RAM.

80.    As alleged in detail above, G.Skill's affirmative representations about

the speed and reliability of its High-Speed Memory were both false and

misleading.

81.    G.Skill's misrepresentations and omissions were likely to deceive, and

did deceive, Plaintiff and reasonable consumers.

<u>The Unfair Prong</u>

82.    G.Skill violated established public policy by violating the CLRA and

FAL, as alleged below and incorporated here. The unfairness of this practice is

tethered to a legislatively declared policy (that of the CLRA and FAL).

83.    The harm to Plaintiff and the class greatly outweighs the public utility

of G.Skill's conduct. There is no public utility to G.Skill's misleading ads. This

injury was not outweighed by any countervailing benefits to consumers or

competition. Misleading ads only injure healthy competition and harm consumers.

*          *          *

84.    For all prongs, G.Skill's misrepresentations and omissions were

intended to induce reliance, and Plaintiff and class members saw, read and

reasonably relied on them when purchasing High-Speed Memory. These

misrepresentations and omissions were a substantial factor in Plaintiff and class

members' purchase decision.

85.    In addition, class-wide reliance can be inferred because the

misrepresentations and omissions were material, i.e., a reasonable consumer would

19

consider them important in deciding whether to buy the High-Speed Memory products.

86.    Plaintiff and class members could not have reasonably avoided this injury because G.Skill's advertisements were misleading to reasonable consumers.

87.    G.Skill's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

88.    Plaintiff and class members were injured as a direct and proximate result of G.Skill's conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about G.Skill's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to G.Skill's misrepresentations.

## Count III: Violation of California False Advertising Law (FAL)
### (on behalf of Plaintiff and the California Subclass)

89.    Plaintiff incorporates by reference each and every factual allegation set forth above.

90.    Plaintiff brings this FAL claim on behalf of himself and members of the California Subclass.

91.    As alleged above, G.Skill falsely advertised its High-Speed Memory Products by falsely representing that the products run out of the box at the advertised speed, and do so reliably.

92.    G.Skill's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  G.Skill had a duty to disclose material, qualifying information because: (1) G.Skill affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) G.Skill had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover

20

that information because it involved complex technical information that was not readily apparent at the time of purchase.  G.Skill was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

93.    G.Skill's representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  G.Skill knew, or should have known through the exercise of reasonable care, that these statements were untrue and misleading.

94.    G.Skill's misrepresentations and omissions were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.

95.     In addition, class-wide reliance can be inferred because G.Skill's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory Products.

96.    G.Skill's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

97.    Plaintiff and class members were injured as a direct and proximate result of G.Skill's conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about G.Skill's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to G.Skill's misrepresentations and omissions.

**Count IV: Violation of the California Consumer Legal Remedies Act (CLRA)**
**(on behalf of Plaintiff and the California Subclass)**

98.    Plaintiff incorporates by reference each and every factual allegation set forth above.

99.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

Class Action Complaint                                                                                      Case No.

100.   Plaintiff and the other members of the California Subclass are consumers that engaged in a consumer transaction when buying High-Speed Memory.

101.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by G.Skill in transactions intended to result in, and which did result in, the sale of goods to consumers.

102.   Plaintiff and the other members of the California Subclass purchased High-Speed Memory for personal, family, or household purposes.

103.   As alleged above, G.Skill violated the CLRA by falsely representing that the products run out of the box at the advertised speed, and do so reliably. This conduct violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

104.   G.Skill's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  G.Skill had a duty to disclose material, qualifying information because: (1) G.Skill affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) G.Skill had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  G.Skill was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

105.   Through its representations and omissions, G.Skill misrepresented the "characteristics," "uses," "benefits," or "quantities" of its High-Speed Memory, in violation of Cal. Civ. Code § 1770(a)(5).

106.   Through its representations and omissions, G.Skill misrepresented that its High-Speed Memory was "of a particular standard, quality, or grade" in violation of Cal. Civ. Code § 1770(a)(7).

107.    G.Skill advertised its High-Speed Memory sticks "with intent not to
sell them as advertised," in violation of Cal. Civ. Code § 1770(a)(9).

108.    G.Skill's representations and omissions were likely to deceive, and
did deceive, Plaintiff and reasonable consumers.  G.Skill knew, or should have
known through the exercise of reasonable care, that these statements were
inaccurate and misleading.

109.    G.Skill's misrepresentations and omissions were intended to induce
reliance, and Plaintiff and class members saw, read and reasonably relied on them
when purchasing High-Speed Memory.

110.    In addition, class-wide reliance can be inferred because Defendants'
misrepresentations and omissions were material, i.e., a reasonable consumer would
consider them important in deciding whether to buy the High-Speed Memory
products.

111.    G.Skill's misrepresentations and omissions were a substantial factor
in Plaintiff's purchase decision and the purchase decision of class members.

112.    Plaintiff and class members were injured as a direct and proximate
result of G.Skill's conduct because (a) they would not have purchased G.Skill
High-Speed Memory if they had known the truth about G.Skill's
misrepresentations and omissions; and (b) they overpaid for High-Speed Memory
products because they are sold at a price premium, due to G.Skill's
misrepresentations and omissions.

113.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff,
on behalf of himself and all other members of the California Subclass, seeks
injunctive relief.

114.    CLRA § 1782 NOTICE.  A CLRA demand letter is
contemporaneously being sent to G.Skill's California headquarters, via certified
mail (return receipt requested), that provides notice of G.Skill's violation of the
CLRA and demands that G.Skill correct the wrongful practices alleged here.  If

23

1  G.Skill does not fully correct the problem for Plaintiff and for each class member

2  by that date, Plaintiff and the subclass will amend to seek all monetary relief

3  allowed under the CLRA.

4      115.   A CLRA venue declaration is attached.

5              **Count V: Breach of Express Warranty**

6          **(on behalf of Plaintiff and the Nationwide Class)**

7      116.   Plaintiff incorporates by reference each and every factual allegation

8  set forth above.

9      117.   Plaintiff brings this cause of action on behalf of himself and the

10  Nationwide Class.

11     118.   As alleged above, when selling High-Speed Memory, G.Skill issued

12  written warranties by representing that the products would run out of the box at the

13  advertised speeds, and would do so reliably.  This was an affirmation of fact about

14  the products and a promise relating to the goods.

15     119.   This warranty was part of the basis of the bargain and Plaintiff and

16  class members relied on this warranty.

17     120.   The High-Speed Memory Products breached this warranty because

18  attempting to achieve the advertised speed requires altering computer firmware,

19  and a substantial portion of the products do not run at the advertised speed or do

20  not do so reliably.

21     121.   G.Skill's breach was a substantial factor and a proximate cause in

22  causing damages and losses to Plaintiff and the class.

23     122.   Plaintiff and class members were injured as a direct and proximate

24  result of G.Skill's conduct because (a) they would not have purchased G.Skill

25  High-Speed Memory if they had known that G.Skill would breach its warranty;

26  and (b) they overpaid for High-Speed Memory products because they are sold at a

27  price premium, due to G.Skill's false warranty.

28

24

123.   Because Plaintiff did not purchase directly from G.Skill and instead purchased from a third-party, pre-suit notice is not required. In any case, Plaintiff is contemporaneously providing notice to G.Skill (together with notice of other violations alleged here) that G.Skill has breached the warranties described above.

**Count VI: Negligent misrepresentation**

**(on behalf of Plaintiff and the Nationwide Class)**

124.   Plaintiff incorporates by reference the facts alleged above.

125.   Plaintiff alleges this claim individually and on behalf of the proposed Nationwide Class.

126.   Through its ads, G.Skill represented to Plaintiff and class members that its High-Speed Memory would run at the specified speed out of the box, and do so reliably.  G.Skill's ads omitted any warning that the High-Speed Memory may not run at the advertised speed or may not do so reliably.

127.   G.Skill's representations were false, because trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.

128.   At the time G.Skill made the above misrepresentations, it knew or should have known that they were false.  G.Skill had no reasonable grounds for believing its representations were true when made.

129.   G.Skill intended that Plaintiff and class members rely on these representations and omissions, and Plaintiff and class members read and reasonably relied on them when purchasing High-Speed Memory.

130.   G.Skill's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  G.Skill had a duty to disclose material, qualifying information because: (1) G.Skill affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) G.Skill had exclusive knowledge of overclocking

facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase. G.Skill was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

131. G.Skill's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

132. Plaintiff and class members were injured as a direct and proximate result of G.Skill's conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about G.Skill's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to G.Skill's misrepresentations and omissions.

## **Jury Demand**

133. Plaintiff demands a jury trial on all issues so triable.

## **Prayer for Relief**

134. Plaintiff seeks the following relief for himself and the proposed class:

   a) An order certifying the asserted claims, or issues raised, as a class action;

   b) A judgment in favor of Plaintiff and the proposed class;

   c) Damages, including statutory and punitive damages where applicable;

   d) Restitution;

   e) Disgorgement, and other just equitable relief;

   f) Pre- and post-judgment interest;

   g) An injunction as allowed by law;

   h) Reasonable attorneys' fees and costs, as allowed by law;

   i) Any additional relief that the Court deems reasonable and just.

Class Action Complaint                                                        Case No.

Dated: January 31, 2022

Respectfully submitted,

By: */s/ Jonas Jacobson*
Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Attorneys for Plaintiff*

27

Class Action Complaint                                              Case No.

DocuSign Envelope ID: D1787525-C90F-4297-804C-BC69D5A4F947

1

2                              **UNITED STATES DISTRICT COURT**

3                              **CENTRAL DISTRICT OF CALIFORNIA**

4

5   TRISTAN HURD, individually and on behalf    Case No.
    of all others similarly situated,
6                                               **CLRA VENUE DECLARATION**
                         *Plaintiff*,
7

8                            v.

9   G.SKILL INTERNATIONAL ENTERPRISE
    CO., LTD., AND G.SKILL USA, INC.
10

11                       *Defendants*.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLRA Venue Declaration

I, Tristan Hurd, declare as follows:

      1.      I am the named plaintiff in the above-captioned lawsuit.

      2.      Unless otherwise stated, I have personal knowledge of the information stated here and could competently testify to it.

      3.      In December of 2020, I purchased 64GB of "3600 MHz" G.Skill Trident Z Neo memory, from Amazon. At the time, I lived in Lake Huges, California.

      4.      I understand, from my attorneys, that Lake Hughes is located within the Central District of California.

      5.      Also, based on the investigation of my attorneys, I understand that G.Skill USA is headquartered in Walnut, California, which is within the Central District of California.

      6.      For these reasons, I understand that the Central District of California is a proper venue for my CLRA claim.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Signature: 

      Tristan Hurd

Dated: 1/28/2022 | 8:41 PM PST

CLRA Venue Declaration