1  Simon Franzini (Cal. Bar No. 287631)
   simon@dovel.com
2  Jonas Jacobson (Cal. Bar No. 269912)
3  jonas@dovel.com
   DOVEL & LUNER, LLP
4  201 Santa Monica Blvd., Suite 600
5  Santa Monica, California 90401
   Telephone: (310) 656-7066
6  Facsimile: (310) 656-7069
7
8  Kevin Kneupper, Esq. (CA SBN 325413)
   kevin@kneuppercovey.com
9  A. Cyclone Covey, Esq. (CA SBN 335957)
   cyclone@kneuppercovey.com
10 KNEUPPER & COVEY, PC
11 17011 Beach Blvd., Ste. 900
   Huntington Beach, CA 92647-5998
12 Tel: (512) 420-8407
13
14 *Counsel for Plaintiffs*

15            **UNITED STATES DISTRICT COURT**
16            **CENTRAL DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| 18  TRISTAN HURD and KEN DIMICCO, individually and on behalf of all others similarly situated, | No. 2:22-cv-00685-SSS-MAR |
| 19 | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| 20            *Plaintiffs*, | |
| 21  v. | **DEMAND FOR JURY TRIAL** |
| 22 | Hon. Sunshine S. Sykes |
| 23  G.SKILL INTERNATIONAL ENTERPRISE CO., LTD., G.SKILL USA, INC., RACERSPEED, INC., and NEUTECK, INC., | |
| 24 | |
| 25 | |
| 26            *Defendants*. | |
| 27 | |

28

# Table of Contents

L.R. 8-1 Jurisdiction Statement .................................................................1

Introduction.................................................................................................1

The Parties .................................................................................................1

Jurisdiction and Venue...............................................................................2

Pleaded Facts .............................................................................................3

I.  G.Skill's ads promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified. ...............................................................3

II.  In reality, trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably...........................9

    A.  Attempting to obtain the advertised speeds requires altering PC firmware. ...................................................................10

    B.  There is a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.................................11

III.  Defendants' ads are misleading to reasonable consumers. ...................13

IV.  Plaintiffs were misled and harmed by Defendants' advertisements. ..................14

Class Action Facts.....................................................................................16

Causes of Action .......................................................................................19

    Count I: Violations of State Consumer Protection Acts ......................19

    Count II: Violation of California Unfair Competition Law (UCL) ....................23

    Count III: Violation of California False Advertising Law (FAL)......................25

    Count IV: Violation of the California Consumer Legal Remedies Act (CLRA)..............................26

    Count V: Violation of New York Gen. Bus. Law § 349......................28

    Count VI: Violation of New York Gen. Bus. Law § 350......................29

Count VII: Breach of Express Warranty ................................................................. 30

Count VIII: Negligent misrepresentation ............................................................... 31

Jury Demand ............................................................................................................. 32

Prayer for Relief ....................................................................................................... 32

### L.R. 8-1 Jurisdiction Statement

1.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

### Introduction

2.   Defendants sell premium, high-speed computer memory.  Their typical customers are computer gamers interested in improving the performance of their games.

3.   The most important measure of memory performance is the speed at which it transfers data (measured in megahertz, or MHz).  Defendants advertise that the memory runs at specific, high MHz speeds (e.g., "3600 MHz").  Defendants' ads do not qualify these representations.

4.   In reality, trying to get the advertised speed requires altering the PC firmware to attempt to "overclock" the memory and make it run at higher than standard speeds.  And when overclocking, there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.

5.   Defendants have made tens of millions of dollars (or more) by deceptively advertising its high-speed memory products.

6.   Plaintiffs bring this case individually and for all consumers who purchased G.Skill's high-speed memory products in the United States.

### The Parties

7.   Plaintiff Tristan Hurd is a citizen of California (domiciled in Lake Hughes, California).

8.   Plaintiff Ken Dimicco is a citizen of New York (domiciled in Huntington Station, New York).

9.   The proposed class includes citizens of most (or potentially all) states.

First Amended Complaint                   1          Case No. 2:22-cv-00685-SSS-MAR

10.     Defendant G.Skill International Enterprise Co., Ltd. ("G.Skill International") is a foreign citizen.  It is a Taiwanese company with its principal place of business in Taiwan.

11.     Defendant G.Skill USA, Inc. ("G.Skill USA") is a citizen of California. It is incorporated in California, with its principal place of business in Walnut, California.  This Amended Complaint refers to the G. Skill entities collectively as "G. Skill."

12.     Defendant Racerspeed, Inc. ("Racerspeed") is a citizen of California. It is incorporated in California, with its principal place of business in Rowland Heights, CA.

13.     Defendant Neuteck, Inc. ("Neuteck") is a citizen of California. It is incorporated in California, with its principal place of business in Walnut, California.

### Jurisdiction and Venue

14.     This Court has personal jurisdiction over Defendants because this cause of action arises from, and has a substantial connection to, Defendants' contacts with California.  In particular, Defendants purposefully marketed and sold G.Skill memory products in California, including to Plaintiff Hurd.  In addition, G.Skill USA is a California corporation, with its principal place of business in Walnut, California. Additionally, Racerspeed, Inc. is a California corporation, with its principal place of business in Rowland Heights. Neuteck, Inc. is also a California corporation with its principal place in Walnut, California.

15.     Because G. Skill International is not a U.S. resident, venue is proper in any District.  *See* 28 U.S.C. § 1391(c)(3).  Venue is proper for G.Skill USA, Racerspeed, and Neuteck under U.S.C. § 1391(b)(1) & (2) because G.Skill USA, Racerspeed, and Neuteck reside in this District and because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including G.Skill's sale of memory to Plaintiff Hurd.

## **Pleaded Facts**

**I.      G.Skill's ads promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified.**

16.    G.Skill markets and sells high-end computer components and accessories. G.Skill markets its products to computer gamers who want to improve the performance of their games.

17.    One of G.Skill's flagship products is its high-speed computer memory (RAM) sticks, including its Trident, Aegis, and Ripjaws lines (collectively, "G.Skill High-Speed Memory").  These memory sticks can be plugged into the memory slots of a PC.



18.    G.Skill's ads highlight the specific speeds of its High-Speed Memory. Memory speed means how fast the memory transfers data, and it is measured in units of Megahertz (MHz).  The more MHz, the purportedly faster the memory and the higher the performance.

First Amended Complaint                    3        Case No. 2:22-cv-00685-SSS-MAR

19.    G.Skill's packaging and advertisements state that its memory runs at specific, high speeds.  For example, here is an Amazon listing for Trident Z RGB "3000 MHz" memory, from the "G.Skill Store" on Amazon: [1]



*Red annotations added*

20.    And here is a Newegg listing for Ripjaws "3600 MHz" memory:[2]



*Red annotations added*

21.    G.Skill's other ads make comparable promises of speed and reliability. For example:



*From Newegg* [3]



*From Amazon* [4]

22.    G. Skill is responsible for the content of the Amazon ads for its products, including specifically the representations about the high speeds of its products. Indeed, G. Skill memory is sold on Amazon with G. Skill's knowledge and authorization.  G. Skill sets the name of the products, which contains the representation at issue.  G. Skills' resellers use this name with G. Skill's knowledge and permission. Indeed, G. Skill intends for the name of its memory to be used for this purpose. Moreover, G. Skill affirmatively set up and administers the "G. Skill Store".  For example:

---

[3] https://www.newegg.com/g-skill-32gb-288-pin-ddr4-sdram/p/N82E16820232091
[4] https://www.amazon.com/G-Skill-TridentZ-16GB-25600-F4-3200C16D-16GTZR/dp/B01MTDEYHU

First Amended Complaint                    5          Case No. 2:22-cv-00685-SSS-MAR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    23.    Accordingly, G. Skill authorizes the products sold on the G. Skill store to

20  be sold, and knows and authorizes the content of the ads.

21    24.    The examples above are representative of G.Skill's advertising.  In sum,

22  G.Skill's ads promise specific high-speeds and reliability and are pervasively

23  disseminated across purchasing channels.  Because these promises are pervasively

24  disseminated, every consumer purchasing G.Skill High-Speed Memory encounters

25  substantially similar or identical promises.

26
27
28

1    25.    Defendant Neuteck operates an Amazon storefront where it exclusively

2 sells G. Skill products, including the High-Speed memory products.[5]

3    26.    Here is an example of a Neuteck Amazon listing for the Trident Z RGB

4 "3600 MHz" memory:



*Red annotations added*

13    27.    Moreover, according to their corporate filings, both G.Skill USA and

14 Neuteck are located in Walnut, California.  Furthermore, the President and registered

15 agent of Neuteck, Ms. Lily Wu, is also the President and registered agent of G.Skill

16 USA.

17    28.    Based on the foregoing, Neuteck is an alter-ego of G. Skill.  Alternatively,

18 Neuteck collaborates with G.Skill and is jointly responsible for selling and marketing

19 G.Skill's high speed memory products in the U.S.

20    29.    Defendant Racerspeed operates an Amazon storefront, where it

21 exclusively sells G.Skill products, including the High-Speed memory products. [6]

22    30.    For example, here is an Amazon listing for Trident Z RGB "3600 MHz"

23 memory, sold by Racerspeed:[7]

---

[5]https://www.amazon.com/s?me=A2Y8CGQ5110ZKT&marketplaceID=ATVPDKIKX0DER
[6] https://www.amazon.com/s?i=merchant-items&me=A3TOECTKC4OEBD
[7] https://www.amazon.com/G-Skill-Trident-32GB-32GTZR-2x16GB/dp/B07Z87ZMN3/ref=sr_1_9?keywords=trident+z&m=A3TOECTKC4OEBD&qid=1660757092&s=merchant-items&sr=1-9

First Amended Complaint                7        Case No. 2:22-cv-00685-SSS-MAR

1

2

3

4

5

6

7

8

9



10    *Red annotations added*

11    31.    Listings by both Racerspeed and Neuteck make the same representations

12    about the speed of Defendants' memory, in the name and in the description, set forth

13    above.

14    32.    To a reasonable consumer that buys G.Skill High-Speed Memory,

15    Defendants' ads of G.Skill's High-Speed Memory products indicate that the memory

16    will run at the stated speed out of the box, and that it will do so reliably across

17    platforms.

18    33.    This is the plain meaning of Defendants' ads, which (a) state the speed

19    unequivocally and without qualification and (b) promise reliability across platforms

20    (AMD and Intel).

21    34.    This is also what consumers reasonably understand memory speeds to

22    indicate, based on typical memory purchases.  Typically, consumers buy memory as

23    part of a complete computer purchase from a PC maker like Dell or HP.  And when the

24    PC arrives, the memory is already running at the stated speed.  In addition, when a

25    consumer buys aftermarket memory (e.g., to add more memory or replace broken

26    memory) it is typical to purchase common, standard speed memory (e.g., memory that

27    runs at the 2133 MHz standard), which runs at the stated speed reliably and out of the

28

box.  For example, a consumer can buy 2133 MHz memory from Dell that runs at this standard speed out of the box.

35.    A reasonable consumer would also expect that, if there were important qualifications about the promised speed, Defendants would make this clear.  For example, if G.Skill's High-Speed Memory was only able to operate at the advertised speed after altering the computer's firmware, this is something a reasonable consumer would want to know, and expect Defendants to clearly disclose.  And if there is a substantial risk that the memory will not run at the advertised speed, or will not run stably, this is something a reasonable consumer would also want to know, and expect Defendants to clearly disclose.  But as illustrated above, Defendants' advertisements contain no such qualifications.

**II.    In reality, trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.**

36.    In reality, G.Skill's memory sticks do not operate at the advertised speed when plugged into a computer.  Rather, they operate at a lower speed.  For example, the default speed for Trident Z Neo "3800 MHz" memory is in fact 2133 MHz.  If a consumer buys these memory sticks, expecting to achieve the advertised speed, and plugs them into his or her computer without doing anything else, the memory only runs at 2133 MHz.

37.    Defendants' ads do not alert consumers that the stick will operate at a lower speed than advertised out of the box.  Nor is a difference in speed clearly observable when performing most computer functions.  Rather, users must go into their computer settings to find out what RAM speed their computer is running.  The result is that a user can purchase G.Skill High-Speed Memory, plug it into a computer, and get the same speed they were getting before, without ever knowing the difference.

38.    If a consumer even realizes that their memory is running slow (compared to the advertised speed), they must attempt to "overclock" it to achieve the advertised

speed.  Overclocking involves pushing computer components beyond their standard operating speeds.

39.     As described next, overclocking memory requires altering the PC's firmware.  And it carries a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.  But Defendants never disclose this on the packaging or their ads.

**A.      Attempting to obtain the advertised speeds requires altering PC firmware.**

40.     Overclocking memory requires adjusting a computer's Basic Input/Output System (BIOS) or Unified Extensible Firmware Interface (UEFI) settings.  A computer's BIOS or UEFI is the program that governs the fundamental mechanisms by which the computer turns on and operates.  On many computers, accessing the BIOS or UEFI settings involves restarting the computer and repeatedly pressing a designated keyboard button (which varies by computer brand) during a brief window of time after the computer turns on.

41.     Once the user has accessed the BIOS or UEFI settings, the user must locate the setting for the RAM frequency (its MHz speed) and increase the RAM frequency to the desired speed.

42.     In addition to changing the frequency, overclocking often requires changing multiple memory "timing" settings, which interact with the frequency settings.

43.     Also, because running the RAM at higher speeds requires additional power, overclocking can also require increasing the voltage settings.

44.     On certain Intel computer systems, the BIOS has an "XMP" (Extreme Memory Profile) setting that will set the various memory parameters to predetermined profiles.  While this simplifies configuration, it still requires altering the BIOS, and these settings are only available on certain motherboards.

First Amended Complaint                    10        Case No. 2:22-cv-00685-SSS-MAR

45.    Altering the computer's firmware in this way poses material risks to the functionality of the computer system, as well as to the memory sticks themselves. Some examples include reducing computer system stability, causing crashes, overheating system components, and causing system components to degrade more quickly.

46.    Because of the risks associated with overclocking, overclocking can void warranties on important components of the computer. Intel's website states, "[a]ltering clock frequency or voltage may void any product warranties and reduce stability, security, performance, and life of the processor and other components." [8]

**B.    There is a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.**

47.    There is a substantial risk that the user's particular combination of other computer components (like the processor and other motherboard components) simply cannot support overclocking at the advertised speed.  Memory interacts with other components in complex ways and overclocking is sensitive to this.  If the combination of components is not optimal, the memory will not run at the advertised speed or it will run unstably (causing software glitches or system crashes).

48.    Beyond this, there is a substantial risk that a reasonable user will not be able to find the precise combination of frequency, timing, and voltage needed to achieve the advertised speeds.

49.    This is why online forums are replete with complaints from G.Skill users that they cannot achieve the advertised speeds.  Here are some representative complaints:

> Can't get advertised 3000MHz on my DDR4 G.Skill RAM. … I went into many different tutorials online and can't seem to find how to get the desired RAM MHz, I was able to go

---

[8] https://www.intel.com/content/www/us/en/support/articles/000005494/processors.html

from 2133 to 2666 without it failing to boot. I don't really know what the recommended voltage is for the ram or if I need to overclock my motherboard as well. [9]

I've tried setting the [Ripjaws] ram speed to 3200mhz manually in my bios, but then my pc will crash and I will get a bsod [blue screen of death, i.e., a crash]. It will crash unless it is at 2133 mhz, which is a horrendous speed for my R3 2200g. … I tried both the first 1 [XMP profile] and the 2nd. From what I understand they essentially set the ram speed to its proper speed? It still crashes. [10]

The RAM I use on my computer is G.Skill Ripjaws V 16 2x8GB DDR4 3600 CL18. Just realized that this whole time my RAM was running at 2133MHz, I changed the XMP profile to Profile 2 which changed it to 3600MHz and my computer crashes anytime I try to exit my BIOS.[11]

The first [Trident 3200 MHz] kit I got I figured it was defective and exchanged it for another kit. I found out it was doing the same thing. If I set the speed to what its rated for then the computer will crash about 3-5 min into any game. Am I missing something here? [12]

50.    A response post illustrates the technical morass of attempting to get the advertised speed:

You may need to loosen timings, increase voltage, or manually set the timings instead of using the XMP settings. I'd bump voltage 0.05v to start. [13]

51.    On G. Skill's online forum, a G.Skill employee admits that, while the "RAM is guaranteed at the rated specs," actually achieving the advertised speed is a "silicon lottery."  This employee states that you "can't expect the max of the platform" (i.e., the advertised speed) to be "easy to set up."[14]  But this is not something that Defendants disclose to consumers *before* they spend hundreds of dollars on G.Skill

---

[9] https://www.reddit.com/r/buildapc/comments/axe2g8/cant_get_advertised_3000mhz_on_my_ddr4_gskill_ram/

[10] https://www.reddit.com/r/buildapc/comments/catamz/g_skill_3200_mhz_ripjaws_v_ram_not_working_at/

[11] https://www.reddit.com/r/buildapc/comments/kh2t1m/ram_not_running_at_full_speed_when_setting_axmp/

[12] https://www.reddit.com/r/overclocking/comments/a9vkzt/trident_z_rgb_unstable_at_rated_speeds_3200mhz/

[13] https://www.reddit.com/r/overclocking/comments/a9vkzt/trident_z_rgb_unstable_at_rated_speeds_3200mhz/

[14] https://www.gskill.us/forum/forum/product-discussion/ddr4/13135-trouble-with-f4-4133c19d-16gtzkw-booting-to-windows-on-z270

High-Speed Memory, and a reasonable consumer is not digging through posts on the G.Skill forum before purchasing.

52.     Like other online forms, G.Skill's own forum also has customer complaints about its false advertising.  For example:

> I've got GSkill Ripjaws V DDR4-3200-CL16-18-18-38 or F4-3200C16D-32GVK or something.. runs at 1.35v I believe... Anyway, in Windows Task Manager performance it says it's only running at 2133 MHz.  … I also wonder why GSkill never though to include a giant sticker on the box with a pamphlet inside saying, "YOU'VE GOT TO CHANGE BIOS SETTINGS FOR THIS TO ACTUALLY GET YOU WHAT YOU PAID FOR!!!" [11]

53.     Then, after this consumer spent many hours following the forum advice and trying to get the memory to work, their system crashed: "here we are nearly 36 hours later... it booted fine, ran great for a LONG time (over 12 hours). Today I went to boot up..... nothing." [15]

## III.    Defendants' ads are misleading to reasonable consumers.

54.     As detailed above, Defendants' packaging and ads promise specific high speeds and reliability, and omit any warning about the risks and realities of overclocking.  And this is not information that a reasonable G.Skill customer already knows.  A typical purchaser of G.Skill High-Speed Memory is not a computer expert (much less a memory overclocking expert).  Rather, a typical purchaser of G.Skill High-Speed Memory is a regular consumer simply looking to improve the performance of their computer games or media software.

55.     If Defendants wanted to be truthful in their packaging and advertising, they would make clear that the speeds they are listing are the *maximum* speeds that the memory can run.  For example, Defendants could state that the memory can run "at maximum speed of 4666 MHz."

---

[15] https://www.gskill.us/forum/forum/general-discussion/general-discussion-aa/163949-my-3200-mhz-ram-only-runs-at-2133-mhz

56.     In addition, if Defendants wanted to be truthful, they would also clearly and prominently warn consumers that achieving the advertised speed requires altering the PC firmware, and that it may not be possible to stably achieve the advertised speed.

57.     Defendants' packaging and ads, however, make no such qualifications and thus made material misstatements and omissions.

58.     In addition, Defendants failed to disclose to consumers that the stated speed was not the default speed, that they would have to make various complex changes to their PC firmware to achieve the stated speed, and that even if they made those complex changes, there is a substantial chance that they will not be able to stably achieved the advertised speed.

59.     The omissions were material, because a reasonable consumer would attach importance to the truth or falsity of those omissions in deciding whether to purchase High-Speed Memory.  Moreover, these omissions are related to the product's central function: the speed of the memory.  As Defendants' marketing campaign reflects, speed is a primary factor in determining the price a consumer will pay for memory and in driving purchase decisions.  Defendants could have and should have clearly revealed this qualifying information, on both the product packaging and in its ads.  And Defendants could have, and should have, clearly put these qualifications in close proximity to its affirmative representations about speed.  While this would drive down the price that Defendants could charge, it would be truthful.

60.     Defendants know the truth about overclocking, and know what the packaging and ads say (and omit).  Thus, Defendants knew that its statements were false and misleading to reasonable consumers and Defendants intended for consumers to rely on its false and misleading statements when purchasing High-Speed Memory.

## IV.    Plaintiffs were misled and harmed by Defendants' advertisements.

61.     In December of 2020, Plaintiff Tristan Hurd purchased 64GB of "3600 MHz" G.Skill Trident Z Neo memory, from Amazon.  He paid about $340 for the

RAM.  Plaintiff saw and relied upon Defendants' claims that the memory would run reliably at 3600 MHz.

62.    Plaintiff Hurd attempted to alter his BIOS to achieve the advertised speed, but his system crashed at any speed above 3200 MHz.  He bought a new motherboard to try to make the memory work, but the memory still caused crashes at the advertised speed.

63.    Had Mr. Hurd known the truth about the memory, he would not have bought it or would not have paid the same price for it.

64.    Plaintiff Hurd would purchase G.Skill High-Speed Memory again if it was actually sold as advertised.  Plaintiff, however, faces an imminent threat of harm because Plaintiff will not be able to rely on Defendants' ads in the future, and thus will not be able to purchase the products even if they were sold as advertised.

65.    In February of 2021, Plaintiff Ken Dimicco purchased 64 GB of "4000 MHz" G.Skill Trident Z Neo memory, which came as a set of four 16 GB RAM sticks, from Newegg.  He paid about $450 for the RAM.  Plaintiff saw and relied upon Defendants' claims that the memory would run reliably at 4000 MHz.

66.    Plaintiff Dimicco attempted to use the XMP 2.0 profile on his motherboard to overclock the RAM to the advertised speed of 4000 MHz, but his machine would crash indicating a RAM error.  He then attempted to use the XMP 1.0 profile of his motherboard to overclock the RAM to the advertised speed of 4000 MHz.  While the machine would boot, it was not stable.  Any time he placed any load on the machine, such as playing a game or benchmarking, he would experience a Windows "Blue Screen of Death" and the machine would crash.  Mr. Dimicco was unable to get his computer to run stably at the advertised 4000 MHz, when using the G.Skill Trident Z Neo Series DDR4 4000 RAM.67.  Had Mr. Dimicco known the truth about the memory, he would not have bought it or would not have paid the same price for it.

68.    Plaintiff Dimicco would purchase G.Skill High-Speed Memory again if it was actually sold as advertised.  Plaintiff, however, faces an imminent threat of harm because Plaintiff will not be able to rely on Defendants' ads in the future, and thus will not be able to purchase the products even if they were sold as advertised.

### Class Action Facts

**The proposed class and subclasses.**

69.    Plaintiffs bring this case on behalf of the proposed Nationwide Class of: All individuals who purchased G.Skill High Speed Memory in the United States, within the governing statute of limitations period.

70.    It is appropriate to include all such individuals in the same class.  All such individuals were presented with substantially similar misrepresentations and omissions by Defendants.  All proposed class members allege the same violations of law and seek the same relief.  There are no conflicts of interest among the proposed class members.

71.    For certain claims, Plaintiffs bring those claims on behalf of a subclass of those consumers who live in the identified states (the "**Consumer Protection Subclass**").

72.    For certain claims, Plaintiff Hurd brings those claims on behalf of a subclass of those consumers who, like Plaintiff Hurd, live in California (the "**California Subclass**").

73.    For certain claims, Plaintiff Dimicco brings those claims on behalf of a subclass who, like Plaintiff Dimicco, live in New York.

74.    The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs'

counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity**

75.    The proposed Class contains members so numerous that separate joinder of each member of the class is impractical.  Based on Defendants' sales, there are at least hundreds of thousands of proposed class members.

**Commonality**

76.    There are questions of law and fact common to the proposed class. Common questions of law and fact include:

- Whether Defendants' advertisements were unfair, deceptive, false, and/or misleading;
- Whether Defendants breached express warranties;
- Damages needed to compensate Plaintiffs and the proposed class.

**Typicality**

77.    Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased one of G.Skill's High-Speed Memory products.  And like the proposed class, Plaintiffs were presented with and relied upon substantially similar advertising by Defendants.  Plaintiff alleges the same violations of law and seeks the same relief as the proposed class.

**Adequacy**

78.    Plaintiffs will fairly and adequately protect the interests of the proposed class.  Plaintiffs' interests are aligned with the interests of the proposed class members: Plaintiffs seek damages and other relief for Defendants' alleged wrongs.  Plaintiffs are represented by experienced class action counsel who are prepared to vigorously litigate this case through judgment and appeal.  There are no conflicts of interest between Plaintiffs and the class.

**Final injunctive relief is appropriate respecting the class as a whole.**

79.     Defendants have sold memory sticks through deceptive advertising on grounds that apply generally to the class.  Accordingly, final injunctive relief prohibiting Defendants from engaging in such conduct would appropriately apply class-wide.

**Predominance and Superiority**

80.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that the same G.Skill ad is found to be deceptive with respect to some proposed class members, but not others.

81.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  Each class member's claims arise out of the same conduct by Defendants.  And a core liability question is common: whether Defendants' advertisements were deceptive.

82.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands (or millions) of similar, individual claims in separate lawsuits.

**Ascertainability**

83.     Class membership can be objectively determined based on whether they bought G.Skill High Speed Memory.  And the number and identity of class members can be determined through Defendants' records, the records of its retailers, and appropriate methods of public notice.

## Causes of Action

### Count I: Violations of State Consumer Protection Acts

### (on behalf of all Plaintiffs and the Consumer Protection Subclass)

84.  Plaintiffs incorporate by reference each and every factual allegation set forth above.

85.  This count is brought on behalf of Plaintiffs and the Consumer Protection Subclass for violations of the following consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |

| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |

| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
|---|---|
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

86.     Each of these statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sale of goods or services to consumers.  Defendants' misleading ads violate each statute's prohibitions.

87.     Defendants' misrepresentations were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on Defendants' misrepresentations and omissions when purchasing High-Speed Memory.

88.     Defendants are aware of the truth about overclocking (as alleged in detail above) and were therefore aware that their ads were misleading to reasonable consumers.

89.     For applicable statutes, Plaintiffs are contemporaneously providing written notice and a demand for correction (together with notice of certain other violations alleged in this Complaint).  Upon the expiration of any governing statutory notice period, Plaintiffs and the class seek all available injunctive or monetary relief.

90.     Defendants had a duty to disclose material, qualifying information because: (1) Defendants affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendants had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendants were in a superior position to know this information, as the makers and sellers of its High-Speed RAM.

91.     Defendants' misrepresentations and omissions were a substantial factor in Plaintiffs and class members' purchase decision.

92.     Plaintiffs and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about Defendants' misrepresentations and

omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendants' misrepresentations and omissions.

## Count II: Violation of California Unfair Competition Law (UCL)

### (on behalf of Plaintiff Hurd and the California Subclass)

93.    Plaintiff Hurd incorporates by reference each and every factual allegation set forth above.

94.    As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff Hurd may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff Hurd brings this UCL claim on behalf of himself and members of the California Subclass.

95.    Defendants violated California's Unfair Competition Law by engaging in unlawful, fraudulent, and unfair conduct (violating each of the three UCL prongs).

### *The Unlawful Prong*

96.    Defendants engaged in unlawful conduct by violating the CLRA and FAL, and other applicable law as alleged in this Complaint.

### *The Fraudulent Prong*

97.    Defendants' affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendants had a duty to disclose material, qualifying information because: (1) Defendants affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendants had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendants were in a superior position to know this information, as the maker and seller of its High-Speed RAM.

98.   As alleged in detail above, Defendants' affirmative representations about the speed and reliability of G.Skill High-Speed Memory were both false and misleading.

99.   Defendants' misrepresentations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

### *The Unfair Prong*

100.   Defendants violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

101.   The harm to Plaintiff and the class greatly outweighs the public utility of Defendants' conduct.  There is no public utility to Defendants' misleading ads.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading ads only injure healthy competition and harm consumers.

*          *          *

102.   For all prongs, Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiff Hurd and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.  These misrepresentations and omissions were a substantial factor in Plaintiff Hurd and class members' purchase decision.

103.   In addition, class-wide reliance can be inferred because the misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory products.

104.   Plaintiff and class members could not have reasonably avoided this injury because Defendants' advertisements were misleading to reasonable consumers.

105.   Defendants' misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

106.   Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased G.Skill High-

Speed Memory if they had known the truth about Defendants' misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendants' misrepresentations.

### Count III: Violation of California False Advertising Law (FAL)
### (on behalf of Plaintiff Hurd and the California Subclass)

107.   Plaintiff incorporates by reference each and every factual allegation set forth above.

108.   Plaintiff brings this FAL claim on behalf of himself and members of the California Subclass.

109.   As alleged above, Defendants falsely advertised the High-Speed Memory Products by falsely representing that the products run out of the box at the advertised speed, and do so reliably.

110.   Defendants' affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendants had a duty to disclose material, qualifying information because: (1) Defendants affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendants had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendants were in a superior position to know this information, as the makers and sellers of its High-Speed RAM.

111.   Defendants' representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were untrue and misleading.

112.   Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.

113.   In addition, class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory Products.

114.   Defendants' misrepresentations and omissions were a substantial factor in Plaintiff Hurd's purchase decision and the purchase decision of class members.

115.   Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about Defendants' misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendants' misrepresentations and omissions.

## Count IV: Violation of the California Consumer Legal Remedies Act (CLRA)

**(on behalf of Plaintiff Hurd and the California Subclass)**

116.   Plaintiff incorporates by reference each and every factual allegation set forth above.

117.   Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

118.   Plaintiff and the other members of the California Subclass are consumers that engaged in a consumer transaction when buying High-Speed Memory.

119.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

120.   Plaintiff and the other members of the California Subclass purchased High-Speed Memory for personal, family, or household purposes.

121.   As alleged above, Defendants violated the CLRA by falsely representing that the products run out of the box at the advertised speed, and do so reliably.  This conduct violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

122.   Defendants' affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendants had a duty to disclose material, qualifying information because: (1) Defendants affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendants had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendants were in a superior position to know this information, as the makers and sellers of the High-Speed RAM.

123.   Through its representations and omissions, Defendants misrepresented the "characteristics," "uses," "benefits," or "quantities" of the High-Speed Memory products, in violation of Cal. Civ. Code § 1770(a)(5).

124.   Through its representations and omissions, Defendants misrepresented that the High-Speed Memory was "of a particular standard, quality, or grade" in violation of Cal. Civ. Code § 1770(a)(7).

125.   Defendants advertised the High-Speed Memory sticks "with intent not to sell them as advertised," in violation of Cal. Civ. Code § 1770(a)(9).

126.   Defendants' representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

127.   Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.

First Amended Complaint                27        Case No. 2:22-cv-00685-SSS-MAR

128.   In addition, class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory products.

129.   Defendants' misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

130.   Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about  Defendants' misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendants' misrepresentations and omissions.

131.   Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

132.   CLRA § 1782 NOTICE.  On January 31, 2022, Plaintiff Hurd sent a CLRA notice and demand letter to G.Skill's California headquarters, via certified mail (return receipt requested).  Because 30 days has passed since Plaintiff sent the notice and thereby complied with statutory requirements, Plaintiff and the subclass now seek all monetary relief allowed under the CLRA.

133.   A CLRA venue declaration is attached.

### Count V: Violation of New York Gen. Bus. Law § 349

### (on behalf of Plaintiff Dimicco and the New York Subclass)

134.   Plaintiff incorporates each and every factual allegation set forth above.

135.   Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

136.   Plaintiff and the subclass purchased G.Skill High-Speed Memory in New York.

137.   Defendants' labelling is consumer-oriented and its misleading labelling has a broad impact on consumers at large, i.e., the multitude of New Yorkers that purchase G.Skill High-Speed Memory.

138.   As alleged in detail above, Defendants' misrepresentations and omissions are likely to mislead reasonable consumers acting reasonably under the circumstances. These misrepresentations and omissions were material (and important) to consumers and drove their choice to purchase G.Skill High Speed Memory.

139.   As alleged above, Defendants' misrepresentations and omissions were willful and knowing.

140.   Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because they did not get what they paid for (memory products that will run at the stated speed out of the box, and that will do so reliably across platforms) and they overpaid for the products because the products are sold at a price premium due to Defendants' misrepresentations.

141.   Plaintiff and the subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 349 (h).

### Count VI: Violation of New York Gen. Bus. Law § 350

### (on behalf of Plaintiff Dimicco and the New York Subclass)

142.   Plaintiff incorporates each and every factual allegation set forth above.

143.   Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

144.   Plaintiff and the subclass purchased G.Skill High-Speed Memory in New York.

145.   Defendants' labelling is consumer-oriented and its misleading labelling has a broad impact on consumers at large, i.e., the multitude of New Yorkers that purchase G.Skill High-Speed Memory.

146.   As alleged in detail above, Defendants' misrepresentations and omissions are likely to mislead reasonable consumers acting reasonably under the circumstances. These misrepresentations and omissions were material (and important) to consumers and drove their choice to purchase G.Skill High Speed Memory.

147.   As alleged above, Defendants' misrepresentations and omissions were willful and knowing.

148.   Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because they did not get what they paid for (memory products whose memory will run at the stated speed out of the box, and that will do so reliably across platforms) and they overpaid for the products because the products are sold at a price premium due to Defendants' misrepresentations

149.   Plaintiff and the subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 350-e (3).

### Count VII: Breach of Express Warranty

#### (on behalf of all Plaintiffs and the Nationwide Class)

150.   Plaintiffs incorporate by reference each and every factual allegation set forth above.

151.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.

152.   As alleged above, when selling High-Speed Memory, Defendants issued written warranties by representing that the products would run out of the box at the advertised speeds, and would do so reliably.  This was an affirmation of fact about the products and a promise relating to the goods.

153.   This warranty was part of the basis of the bargain and Plaintiffs and class members relied on this warranty.

154.   The High-Speed Memory Products breached this warranty because attempting to achieve the advertised speed requires altering computer firmware, and a

First Amended Complaint                    30        Case No. 2:22-cv-00685-SSS-MAR

substantial portion of the products do not run at the advertised speed or do not do so reliably.

155.    Defendants' breach was a substantial factor and a proximate cause in causing damages and losses to Plaintiffs and the class.

156.    Plaintiffs and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known that Defendants would breach its warranty; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendants' false warranty.

157.    Because Plaintiffs did not purchase directly from Defendants and instead purchased from a third-party, pre-suit notice is not required. In any case, Plaintiffs are contemporaneously providing notice to G.Skill (together with notice of other violations alleged here) that G.Skill has breached the warranties described above.

## Count VIII: Negligent misrepresentation
### (on behalf of all Plaintiffs and the Nationwide Class)

158.    Plaintiffs incorporate by reference the facts alleged above.

159.    Plaintiffs allege this claim individually and on behalf of the proposed Nationwide Class.

160.    Through its ads, Defendants represented to Plaintiffs and class members that the High-Speed Memory would run at the specified speed out of the box, and do so reliably.  Defendants' ads omitted any warning that the High-Speed Memory may not run at the advertised speed or may not do so reliably.

161.    Defendants' representations were false, because trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.

162.    At the time Defendants made the above misrepresentations, they knew or should have known that they were false.  Defendants had no reasonable grounds for believing their representations were true when made.

First Amended Complaint                31        Case No. 2:22-cv-00685-SSS-MAR

163.   Defendants intended that Plaintiffs and class members rely on these representations and omissions, and Plaintiffs and class members read and reasonably relied on them when purchasing High-Speed Memory.

164.   Defendants' affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendants had a duty to disclose material, qualifying information because: (1) Defendants affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendants  had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendants were in a superior position to know this information, as the makers and sellers of the High-Speed RAM.

165.   Defendants' misrepresentations and omissions were a substantial factor in Plaintiffs' purchase decision and the purchase decision of class members.

166.   Plaintiffs and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased G.Skill High-Speed Memory if they had known the truth about Defendants' misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendants'  misrepresentations and omissions.

### Jury Demand

167.   Plaintiffs demand a jury trial on all issues so triable.

### Prayer for Relief

168.   Plaintiffs seek the following relief for himself and the proposed class:

    a)  An order certifying the asserted claims, or issues raised, as a class action;

    b)  A judgment in favor of Plaintiffs and the proposed class;

    c)  Damages, including statutory and punitive damages where applicable;

1        d)  Restitution;

2        e)  Disgorgement, and other just equitable relief;

3        f)  Pre- and post-judgment interest;

4        g)  An injunction as allowed by law;

5        h)  Reasonable attorneys' fees and costs, as allowed by law;

6        i)  Any additional relief that the Court deems reasonable and just.

7

8  Dated: September 27, 2022           Respectfully submitted,

9

10                      By: */s/ Simon Franzini*

11                      Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com

12                      Jonas Jacobson (Cal. Bar No. 269912)

13                      jonas@dovel.com
DOVEL & LUNER, LLP

14                      201 Santa Monica Blvd., Suite 600

15                      Santa Monica, California 90401
Telephone: (310) 656-7066

16                      Facsimile: (310) 656-7069

17

18                      Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com

19                      A. Cyclone Covey, Esq. (CA SBN

20                      335957)
cyclone@kneuppercovey.com

21                      KNEUPPER & COVEY, PC

22                      17011 Beach Blvd., Ste. 900

23                      Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

24

25                      *Counsel for Plaintiffs*

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRISTAN HURD, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **CLRA VENUE DECLARATION** |
| v. | |
| G.SKILL INTERNATIONAL ENTERPRISE CO., LTD., AND G.SKILL USA, INC. | |
| *Defendants*. | |

CLRA Venue Declaration

I, Tristan Hurd, declare as follows:

       1.      I am the named plaintiff in the above-captioned lawsuit.

       2.      Unless otherwise stated, I have personal knowledge of the information stated here and could competently testify to it.

       3.      In December of 2020, I purchased 64GB of "3600 MHz" G.Skill Trident Z Neo memory, from Amazon. At the time, I lived in Lake Huges, California.

       4.      I understand, from my attorneys, that Lake Hughes is located within the Central District of California.

       5.      Also, based on the investigation of my attorneys, I understand that G.Skill USA is headquartered in Walnut, California, which is within the Central District of California.

       6.      For these reasons, I understand that the Central District of California is a proper venue for my CLRA claim.

       I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Signature:

Tristan Hurd

Dated: 1/28/2022 | 8:41 PM PST

CLRA Venue Declaration