Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISTAN HURD and KEN DIMICCO, each individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> G.SKILL INTERNATIONAL ENTERPRISE CO., LTD., G.SKILL USA, INC., NEUTECK, INC., and RACERSPEED, INC., <br><br> *Defendants*. | Case No. 2:22-cv-00685-SSS-MAR <br><br> **Unopposed Notice of Motion and Motion for Preliminary Approval of Class Action Settlement** <br><br> Date: December 5, 2025 <br> Time: 2:00 p.m. <br> Dept: Courtroom 2 <br> Judge: Hon. Sunshine S. Sykes |

**Table of Contents**

I.      Introduction. ................................................................................................ 1

II.     Factual Background. ................................................................................... 1

        A.      Plaintiffs' allegations. ..................................................................... 1

        B.      Settlement negotiations and mediations. ....................................... 2

        C.      The Settlement. ............................................................................... 3

                1.      Class definition. ................................................................... 3

                2.      Benefits to class members. .................................................. 3

                3.      Scope of the release. ............................................................ 6

                4.      Notice and administration. ................................................... 6

                5.      Attorneys' fees and costs. .................................................... 7

                6.      Service awards. .................................................................... 8

III.    The Settlement merits preliminary approval. ............................................ 9

        A.      The Court should conditionally certify a nationwide Settlement Class. ...................... 9

        B.      The Settlement is fair, reasonable, and adequate. ....................... 11

                1.      The Settlement is the product of serious, informed, non-collusive
                        negotiations. ...................................................................... 11

                2.      The Settlement falls well within the range of possible approval. ................... 13

                3.      The Settlement does not improperly grant preferential treatment to the
                        proposed Class Representatives or segments of the Class. ............................. 16

                4.      The Settlement has no obvious deficiencies. ..................... 17

        C.      The Court should approve the proposed notice plan. ................. 17

IV.     Conclusion. .............................................................................................. 18

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 5, at 2:00 p.m., in Courtroom 2 of the United States District Court for the Central District of California, located at 3470 Twelfth Street, Riverside, California 92501, Plaintiffs Tristan Hurd and Ken Dimicco will and hereby do move this Court for entry of an order:

1. Granting preliminary approval of the proposed class action settlement set forth in the Settlement Agreement ("Agreement"), attached as Exhibit 1;

2. Preliminarily certifying, for settlement purposes only, a nationwide Settlement Class of all individual consumers who, while residing in the United States, purchased during the Class Period one or more G.Skill DDR-4 (non-SODIMM/laptop) memory product with a rated speed over 2133 megahertz (MHz) or G.Skill DDR-5 (non-SODIMM/laptop) memory product with a rated speed over 4800 megahertz.

3. Preliminarily appointing Plaintiffs Tristan Hurd and Ken Dimicco as class representatives of the Settlement Class for settlement purposes;

4. Preliminarily appointing Dovel & Luner LLP as Class Counsel for the Settlement Class;

5. Preliminarily finding that the terms of the Settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

6. Approving that the proposed Notice Plan complies with the requirements of Rule 23 and due process, and that the Notice is to be sent to the Settlement Class Members as set forth in the Agreement and pursuant to the deadlines in the Agreement.

This Motion is based on this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; the Declarations of Richard Lyon, Tristan Hurd, Ken Dimicco, Steven Weisbrot (on behalf of Angeion Group), Kevin Knuepper, and Colin Weir, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter. We shared this Motion with Defendants in advance of filing, and they informed us that the Motion is unopposed.

1

2                                   **Table of Authorities**

3  **Cases**

4  *Ahmed v. HSBC Bank USA*,

5      2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) ........................................... 16

6  *All Consumer & Reseller Actions*,

7      2016 U.S. Dist. LEXIS 99071 (N.D. Cal. July 26, 2016) ............................................. 11

8  *Allen v. Bedolla*,

9      787 F.3d 1218 (9th Cir. 2015) ..................................................................................... 12

10 *Amchem Prods. v. Windsor*,

11     521 U.S. 591 (1997) ..................................................................................................... 17

12 *Bakhtiar v. Info. Res., Inc.*,

13     2020 U.S. Dist. LEXIS 258600 (N.D. Cal. Aug. 4, 2020) ...................................... 13, 14

14 *Booth v. Strategic Realty Tr. Inc.*,

15     2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 18, 2015) .............................................. 6

16 *Briseño v. Henderson*,

17     998 F.3d 1014 (9th Cir. 2021) ..................................................................................... 12

18 *Custom LED, LLC v. eBay, Inc.*,

19     2013 U.S. Dist. LEXIS 165881 (N.D. Cal. Nov. 20, 2013) ........................................... 6

20 *Czuchaj v. Conair Corp.*,

21     No. 13-cv-1901-BEN (RBB), 2015 U.S. Dist. LEXIS 178142 (S.D. Cal. Nov. 12, 2015) ............. 10

22 *Dyer v. Wells Fargo Bank, N.A.*,

23     303 F.R.D. 326 (N.D. Cal. 2014) ................................................................................. 16

24 *Frasco v. Flo Health, Inc.*,

25     349 F.R.D. 557 (N.D. Cal. 2025) ................................................................................. 10

26 *Hanlon v. Chrysler Corp.*,

27     150 F.3d 1011 (9th Cir. 1998) ................................................................................ 11, 13

28 *Hesse v. Sprint Corp.*,

       598 F.3d 581 (9th Cir. 2010) .......................................................................................... 6

*In re Apple Inc. Device Performance Litig.*,

    2021 U.S. Dist. LEXIS 50546 (N.D. Cal. Mar. 17, 2021) ................................................... 8

*In re Hyundai and Kia Fuel Econ. Litig.*,

    926 F.3d 539 (9th Cir. 2019)........................................................................................................ 9

*In re MacBook Keyboard Litig.*,

    2022 U.S. Dist. LEXIS 220247 (N.D. Cal. Dec. 2, 2022) ........................................... 10

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000)...................................................................................................... 15

*In re MyFord Touch Consumer Litig.*,

    2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) ........................................... 12

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,

    779 F.3d 934 (9th Cir. 2015)...................................................................................................... 16

*In re Tableware Antitrust Litig.*,

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................... 11

*In re Toys R Us-Del., Inc. FACTA Litig.*,

    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................................... 4

*In re Wireless Facilities, Inc.*,

    253 F.R.D. 607 (S.D. Cal. 2008)................................................................................................. 9

*Kumar v. Salov N. Am. Corp.*,

    2017 U.S. Dist. LEXIS 105463 (N.D. Cal. July 7, 2017) ............................................ 14

*Larsen v. Trader Joe's Co.*,

    2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ............................................ 14

*Lopez v. Youngblood*,

    2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sep. 1, 2011) ................................................ 8

*McKinney v. Corsair Gaming, Inc.*,

    2025 U.S. Dist. LEXIS 127576 (N.D. Cal. July 2, 2025) ....................................... 6, 10

*Medoff v. Minka Lighting, LLC*,

   No. 2:22-cv-08885-HDV, 2024 U.S. Dist. LEXIS 235592 (C.D. Cal. July 10, 2024)...................... 8

*Morales v. Stevco, Inc.*,

   2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) .......................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 14

*Navarrete v. Sprint United Mgmt. Co.*,

   2021 U.S. Dist. LEXIS 40398 (C.D. Cal. Mar. 2, 2021) ............................................ 15

*Perez v. CVS Health Corp.*,

   No. 1:19-cv-00449-DAD-BAM, 2021 U.S. Dist. LEXIS 110216 (E.D. Cal. June 11, 2021)......... 13

*Perks v. ActiveHours, Inc.*,

   2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021) ...................................... 16, 17

*Rodriguez v. W. Publ'g Corp.*,

   563 F.3d 948 (9th Cir. 2009)......................................................................... 11

*Satchell v. Fed. Express Corp.*,

   2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ........................................... 11

*Schneider v. Chipotle Mexican Grill, Inc.*,

   2020 U.S. Dist. LEXIS 16365 (N.D. Cal. Jan. 31, 2020) ........................................... 10

*Schneider v. Chipotle Mexican Grill*, Inc.,

   336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................... 8

*Shay v. Apple Inc.*,

   2024 U.S. Dist. LEXIS 48702 (S.D. Cal. Mar. 18, 2024)............................................. 7

*Smith v. Keurig Green Mt., Inc.*,

   2022 U.S. Dist. LEXIS 120863 (N.D. Cal. July 8, 2022).......................................... 15

*Spann v. J.C. Penney Corp.*,

   211 F. Supp. 3d. 1244 (C.D. Cal. 2016) ............................................................... 4

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003)........................................................................... 9

*Tan v. Quick Box, LLC*,

    2025 U.S. Dist. LEXIS 127287 (S.D. Cal. July 3, 2025)...................................................... 8

*Tuttle v. Audiophile Music Direct, Inc.*,

    2023 U.S. Dist. LEXIS 229241 (W.D. Wash. Dec. 26, 2023)........................................... 4

*Villafan v. Broadspectrum Downstream Servs.*,

    2021 U.S. Dist. LEXIS 249763 (N.D. Cal. Apr. 8, 2021) .............................................. 11

**Statutes**

28 U.S.C. § 1715(b) .......................................................................................................... 7

28 U.S.C. §§ 1712-1714..................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23(c)(2)(B).............................................................................................. 17

Fed. R. Civ. P. 23(e)(1)(B)........................................................................................... 9, 17

Fed. R. Civ. P. 23(e)(2).................................................................................................. 9, 16

1    **I.      Introduction.**

2          The Parties have reached a hard-fought classwide resolution. After extensive litigation and

3    several mediations, both parties accepted a mediator's proposal that provided for a $2,400,000 non-

4    reversionary cash common fund and meaningful nonmonetary relief to Settlement Class Members.

5    As detailed below, the Settlement meets all the criteria for preliminary approval pursuant to Rule

6    23(e)(1) and Ninth Circuit precedent. The Parties request that the Court preliminarily approve the

7    Settlement, approve the proposed notice, preliminarily certify a nationwide Settlement Class, appoint

8    Class Counsel and the Class Representatives for the nationwide Settlement Class, and schedule a

9    final approval hearing.

10   **II.     Factual Background.**

11         **A.      Plaintiffs' allegations.**

12         Defendants G.Skill International Enterprise Co., Ltd., G.Skill USA, Inc., Neuteck, Inc., and

13   Racerspeed, Inc. (collectively, "G.Skill" or "Defendants") make and sell high-speed memory.

14   Complaint (Dkt. 42) ¶¶2, 16. Defendants' product packaging and product listings—on its own

15   website and resellers' websites—state that G.Skill's memory runs at specific, high speeds, measured

16   in megahertz (MHz). *Id.* ¶¶16-35. Plaintiffs Tristan Hurd and Ken Dimicco, residents of California

17   and New York respectively, purchased G.Skill high-speed memory products. *Id.* ¶¶61-68. Out of the

18   box, the G.Skill DDR-4 memory products, like those Plaintiffs purchased, run at a speed of 2133

19   MHz. *Id.* ¶36. But the products are advertised with speeds above 2133 MHz, such as "3600 MHz" or

20   "4000 MHz." *Id.* ¶¶61-68. Plaintiffs allege that they, like other reasonable consumers, understood

21   Defendants' speed representations to mean that the products would run at the stated speed out of the

22   box, and that they relied on these representations when making their purchases. *Id.* ¶¶35, 51, 54-60.

23         Plaintiffs allege that Defendants' speed representations were false and misleading. They

24   allege that the higher stated speeds can be achieved only if users modify their computers' firmware,

25   through BIOS firmware adjustments (a process known as "overclocking"), which does not always

26   work. *Id.* ¶¶36-53. Defendants' product packaging and listings do not qualify the stated speed in this,

27   or any other, way. *Id.* ¶¶54-60. As a result, Plaintiffs allege that Defendants made misrepresentations

28   that allowed them to charge a price premium for their high-speed memory. *Id.* ¶92.

Based on these allegations, this action was filed on January 31, 2022. *See* Dkt. 1. The operative complaint is the First Amended Complaint ("Complaint"), filed on October 26, 2022. *See* Dkt. 42. Plaintiffs allege violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act; violations of New York's General Business Law Sections 349 and 350; and violations of the consumer protection laws of various states nationwide, as well as a nationwide breach of warranty and negligent misrepresentation claims. *Id.* ¶¶69-133; Lyon Decl. ¶8; Agreement at 1.

The case has been vigorously litigated for several years with extensive fact and expert discovery (including written discovery, voluminous document production, five depositions, and expert reports from five different experts); substantial motion practice (including multiple rounds of briefing and supplemental briefing on Plaintiffs' motion for class certification); and three separate mediations. Lyon Decl. ¶¶8-10; Agreement at 1-2.

Defendants dispute, and continue to dispute, all material allegations of the Complaint, including those allegations set forth above. Agreement at 2. Defendants expressly deny any liability or wrongdoing of any kind, and maintain that the challenged speed representations are accurate and lawful. *Id.* at 2-3.

### B.    Settlement negotiations and mediations.

Settlement negotiations were arduous, contentious, and well informed. Lyon Decl., ¶¶8-12. The parties first attempted to mediate this matter early in the case. They prepared mediation briefs and mediated before Stephanie Chow of Mediated Negotiations on July 21, 2022. *Id.*, ¶11. The mediation did not result in settlement. The parties then litigated the case for two years before agreeing to mediate again. *Id.* They prepared another round of mediation briefs and mediated before Shirish Gupta of JAMS on October 7, 2024. *Id.* This mediation also did not result in a settlement, and the parties continued to litigate. *Id.* After the Court entered its Order on class certification, the Parties agreed to a third mediation. *Id.* They submitted another round of mediation briefs and mediated before Mr. Gupta on August 28, 2025. *Id.* The Parties did not settle on the day of the mediation but Mr. Gupta presented the Parties with a mediator's proposal. *Id.* The Parties accepted the mediator's proposal on September 10, 2025. *Id.* The Parties subsequently negotiated a long-form agreement.

1   *Id.* ¶13. The negotiation involved the exchange of multiple drafts, which concluded on October 24,

2   2025. *Id.* The Agreement is attached to this Motion as Exhibit 1.

3          The Parties did not discuss attorneys' fees, costs, and service awards to the Plaintiffs (through

4   the mediator or otherwise) until after their negotiations regarding the benefits to the Settlement Class.

5   *Id.* ¶12. Nor did the Parties negotiate any clear sailing provision. Defendants are free to challenge the

6   amount of proposed Class Counsel's fee request. *Id.*; Agreement §8.1.

7          **C.    The Settlement.**

8                 **1.    Class definition.**

9          The Settlement Class consists of all individuals in the United States who purchased one or

10  more G.Skill DDR-4 (non-SODIMM, non-laptop) memory products with a rated speed over 2133

11  MHz or G.Skill DDR-5 (non-SODIMM, non-laptop) memory products with a rated speed over 4800

12  MHz, during the Class Period. Agreement §§1.23, 1.30.

13         At class certification, the Court certified a California class, a New York class, and a 26-state

14  multi-state consumer protection class. *See* Dkt. 118 (Class Certification Order). Plaintiffs did not

15  move to certify a nationwide class at that time. *Id.* The Settlement Class definition mirrors the class

16  definition that the Court already certified except that it applies nationwide. As is typical in these

17  cases, settlement discussions, as guided by the mediator, were based on a nationwide resolution. This

18  is because the parties understood that if Plaintiffs prevailed in this lawsuit on behalf of the certified

19  classes, Plaintiffs' counsel intended to file additional lawsuits in other states. Lyon Decl. ¶11.

20  Accordingly, to maximize the benefits to the class, and to serve the interests of judicial economy, the

21  mediator proposed—and the Parties ultimately accepted—a classwide settlement for a nationwide

22  class of purchasers. *Id.* ¶¶11-13.

23                **2.    Benefits to class members.**

24         <u>Monetary relief.</u> The Settlement Agreement requires G.Skill to establish a $2,400,000 non-

25  reversionary cash fund. Agreement §1.32. The Settlement Fund will be used to make benefit

26  payments to the Settlement Class, as well as to pay notice and administration costs, service awards to

27  the Plaintiffs, and an award of attorneys' fees and costs—as approved by the Court. *Id.*

28

To receive a benefit payment, a Settlement Class Member must fill out and file a claim form that is approved by the Settlement Administrator. *Id.* §§1.30-35, 2.1(b). Class Members may submit a claim for up to five qualifying purchases without proof of purchase or more than five qualifying purchases with reasonable proof of purchase. *Id.* §2.1(b). Class Members whose claims are approved by the Settlement Administrator will receive a pro rata portion of the Net Settlement Fund after the payment of any notice and administration costs, service awards, and attorneys' fees and costs. *Id.*

Based on comparable settlements, including others administered by the proposed Settlement Administrator, Plaintiffs anticipate a claims rate of 2-3%. Lyon Decl. ¶15, Weisbrot Decl. ¶59. Direct notice is not possible for most of the class. *See* Lyon Decl. ¶16; Agreement §§4.1-4.2 (providing for both direct and publication notice because Defendants are unable to identify most Class Members who purchased products from third party resellers). In these scenarios, the claims rate is expected to be on the lower end of claims rates seen in consumer class actions. *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 456, 468 n.134 (C.D. Cal. 2014) (noting claims rates in consumer litigation generally "range from two to twenty percent" but "may be depressed" where "there are millions of class members" and direct notice is not possible for all); *see, e.g., id.* at 468 n.134 (finding 3% claims rate "appropriate" where direct notice was not possible for the entire class); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d. 1244, 1257 (C.D. Cal. 2016) (claims rate of approximately 2.75% where "direct notice could not be provided to more than half of the class"); *Tuttle v. Audiophile Music Direct, Inc.*, 2023 U.S. Dist. LEXIS 229241, at *12, *37 (W.D. Wash. Dec. 26, 2023) (claims rate of approximately 2.38% where less than half the class was estimated to have received direct notice).

<u>Nonmonetary programmatic relief.</u> The Settlement Agreement also provides for significant nonmonetary relief that benefits the Settlement Class. Within 90 days of the effective date of the Settlement, G.Skill will make changes to its packaging, website, and content provided to resellers. Instead of including an unqualified listed speed (e.g., "DDR4-3200"), Defendants will qualify the listed speed by adding "up to" (e.g. "up to DDR4-3200") and a disclaimer that indicates that, to achieve this speed, "overclocking / BIOS adjustments" are required. Agreement §2.2. That is, Defendants will update their labeling to identify product speeds in the exact manner that Plaintiffs alleged would not be misleading. Complaint (Dkt. 42) ¶35 ("[I]f G.Skill's High-Speed Memory was

only able to operate at the advertised speed after altering the computer's firmware [i.e., adjusting BIOS], this is something a reasonable consumer would want to know, and expect Defendants to clearly disclose.").

Such measures will meaningfully benefit Class Members and future consumers, protecting them from the alleged harm at the heart of this case. Together with the monetary relief, the programmatic relief makes the Settlement an excellent result for the Class.

Class recovery. The estimated payment to purchasers under this Settlement (based on the anticipated claims rate) is approximately $7.80. Lyon Decl., ¶22. This is an excellent result. As explained in Plaintiffs' class certification briefing, actual damages for any one of Plaintiffs' claims are measurable in the form of a price premium paid by the class solely as a result of the challenged speed representation. Dkt. 84 (Class Certification Mot.) at 16-18; Dkt. 84-5 (Weir Decl.). Price premiums in cases like this typically fall in a range between 0-16% (with a midpoint of 8%). Second Declaration of Colin Weir, ¶¶4-6. Accordingly, if the midpoint price premium is applied to the purchase of an $80 G.Skill high speed memory product, price premium damages would be around $6.40 (i.e., 8% of $80) for the purchase. Lyon Decl., ¶22. And to achieve such a result, Plaintiffs would need to prove their case and overcome all of Defendants' arguments at summary judgment and trial, an uncertain path that could result in no recovery at all. The Settlement payment is a great outcome for Class Members.

No reversions. Under the Settlement, no amount of the Settlement Fund will revert to the Defendants. Agreement §2.1(e). The Settlement contemplates a *cy pres* award, providing that any funds resulting from expired benefit checks will be sent by the Settlement Administrator to Khan Academy and will not revert to G.Skill. *Id.* §2.1(d). Khan Academy is a nonprofit organization that provides free online educational resources, including for computer science and other STEM subjects. Khan Academy's goals are relevant to the subject of this action, which concerns computer performance for PC users. Neither the Parties nor their counsel have any relationship with Khan Academy. Lyon Decl. ¶18.

1
### 3. Scope of the release.

The Settlement Agreement calls for a narrowly tailored release of only those claims "on the basis of, arising out of, or relating to the claims or facts alleged, or that could reasonably have been alleged, in the Action." Agreement §1.25. Under the Agreement, Settlement Class Members retain their rights against Defendants to bring any claims disconnected from the facts and allegations in this lawsuit. This avoids inefficient and duplicative litigation while complying with Ninth Circuit precedent requiring that released claims be based on the "identical factual predicate." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *see, e.g.*, *Booth v. Strategic Realty Tr. Inc.*, 2015 U.S. Dist. LEXIS 84143, at *25 (N.D. Cal. June 18, 2015) (holding substantially similar release is "permissible" because it "only releases claims based on the factual predicate of the complaint"); *Custom LED, LLC v. eBay, Inc.*, 2013 U.S. Dist. LEXIS 165881, at *19-20 (N.D. Cal. Nov. 20, 2013) (holding substantially similar release is not "improperly broad" because "the claims to be released directly track the allegations in the complaint" and "the settlement does not release unrelated claims that class members may have against defendants"); *McKinney v. Corsair Gaming, Inc.*, 2025 U.S. Dist. LEXIS 127576, at *7 (N.D. Cal. July 2, 2025) (preliminarily approving settlement with materially identical release). Proposed Class Counsel are not aware of any other pending cases that will be affected by the Settlement, including the proposed release. Lyon Decl. ¶19; Kneupper Decl. ¶34.

### 4. Notice and administration.

The Parties request that the Court appoint Angeion Group as Settlement Administrator. Lyon Decl. ¶26. Angeion is a nationally recognized leader in settlement administration. Angeion was also recently approved, and is currently serving as the settlement administrator, in a substantially similar settlement involving one of G.Skill's primary competitors, Corsair Gaming. *McKinney*, 2025 U.S. Dist. LEXIS 127576, at *6. Angeion has robust procedures in place to ensure secure handling of Class Member data and maintains comprehensive insurance coverage, as detailed in the Declaration of Steven Weisbrot, President and CEO of Angeion. Weisbrot Decl. ¶¶54-58.

Angeion's administration costs will be a fixed fee of $295,000. Agreement §1.28; Weisbrot Decl. ¶60. This is reasonable in relation to the value of the Settlement, amounting to approximately 12% of the Settlement Fund. *See, e.g.*, *Shay v. Apple Inc.*, 2024 U.S. Dist. LEXIS 48702, at *29 (S.D.

Cal. Mar. 18, 2024) (approving $204,000 in administration costs, representing 11% of common fund, in settlement with similar structure and notice plan). These expenses will be paid from the Settlement Fund. Agreement §1.32.

To effectuate the best possible notice, Defendants will first provide the Settlement Administrator with a Class List of Class Members who made qualifying purchases who are reasonably known to Defendants, including their email addresses and mailing addresses. Agreement §4.1. The Settlement Administrator will provide direct notice to these Class Members via email. *Id.* §4.2(a); Weisbrot Decl. ¶¶17-22. For any Class Members whose emails are missing or invalid, or whose email notices are returned as undeliverable, the Settlement Administrator will provide direct notice by First-Class U.S. Mail. Agreement §4.2(a)-(b); Weisbrot Decl. ¶¶16-23. Plaintiffs recognize that Class Members primarily purchased products from resellers. Agreement §4.1(a). Thus, the Settlement Administrator will supplement the direct notice with a digital media campaign to provide publication notice through multiple channels and platforms—including programmatic display ads (i.e., website banners), social media ads, video ads, and paid search ads. Agreement §4.2(e); Weisbrot Decl. ¶¶24-36. The Settlement Administrator will also create a Settlement Website, which will provide detailed information about the Settlement, including instructions on how to opt out of or object to the Settlement, and allow Class Members to complete and submit a claim online. Agreement §4.2(c); Weisbrot Decl. ¶¶37-40.

Pursuant to CAFA and the Agreement, the Parties, through the Settlement Administrator, will also serve notice to federal and state officials, as required by 28 U.S.C. § 1715(b), within 10 days of the filing of this Motion. Agreement §4.2(f); Weisbrot Decl. ¶41. The Settlement fully complies with CAFA: it does not provide for a recovery of coupons, does not result in a new loss to any Class Member, and does not provide greater relief to some Class Members on the basis of proximity to the Court. 28 U.S.C. §§ 1712-1714 .

### 5.    Attorneys' fees and costs.

Proposed Class Counsel intends to apply to the Court for its reasonable attorneys' fees, not to exceed one-third (1/3) of the Settlement Fund ($800,000). Agreement §8.1; Lyon Decl. ¶20. This follows the preferred approach in the Ninth Circuit. *See In re Apple Inc. Device Performance*

*Litig.*, 2021 U.S. Dist. LEXIS 50546, at *21 (N.D. Cal. Mar. 17, 2021) ("the use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees"); *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *9 (E.D. Cal. Sep. 1, 2011) (in common fund cases, the "percentage of the available fund analysis is the preferred approach in class action fee requests"). And the requested percentage is in line with those regularly approved in this Circuit. *See, e.g., Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-HDV, 2024 U.S. Dist. LEXIS 235592, at *2-5 (C.D. Cal. July 10, 2024) ("Class Counsel's fee request of … one-third of the Settlement Fund" "is appropriate" and "reasonable"); *Tan v. Quick Box, LLC*, 2025 U.S. Dist. LEXIS 127287, at *21 (S.D. Cal. July 3, 2025) (awarding one-third of the common fund in fees to Kneupper Covey); *Schneider v. Chipotle Mexican Grill*, Inc., 336 F.R.D. 588, 600-602 (N.D. Cal. 2020) (awarding 30% of the common fund in product labeling case).

Proposed Class Counsel also intends to seek reimbursement of reasonable expenses. Agreement §8.1. Counsel expects costs to be approximately $125,000, which includes the expenses of retaining experts and mediation fees. Lyon Decl. ¶20.

### 6.    Service awards.

Proposed Class Counsel intends to request service awards of $5,000 each to compensate Mr. Hurd and Mr. Dimicco for their service as named Plaintiffs and proposed Class Representatives. Agreement §8.3; Hurd Decl. ¶7; Dimicco Decl. ¶7; Lyon Decl. ¶27. Each of the Plaintiffs has spent substantial time on this case. They consulted on the drafting of, and reviewed, complaints before filing. They gathered documents in response to G.Skill's discovery requests. They testified at all-day depositions. They submitted declarations in support of Plaintiffs' motion for class certification. They consulted with proposed Class Counsel before multiple mediations and were available by telephone during the mediations. They discussed the mediation with proposed Class Counsel, evaluated and agreed to the classwide resolution, and reviewed and agreed to the terms of the Settlement Agreement. Hurd Decl. ¶7; Dimicco Decl. ¶7. They have remained diligent in responding to Class Counsel and informed of the status of the case throughout every stage, including settlement. *Id.*; Lyon Decl. ¶27. The service awards will be paid from the Settlement Fund and are subject to the Court's

approval. Agreement §8.3; Hurd Decl. ¶8; Dimicco Decl. ¶8. However, the Settlement is not contingent on the Court granting the requested awards. *Id.*

### III.    The Settlement merits preliminary approval.

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Under Rule 23(e), approving a class action settlement is a two-step process: preliminary approval and then final approval, requiring a fairness hearing. Fed. R. Civ. P. 23(e)(1)(B), (e)(2). In the first stage here, the Court asks two questions. First, the Court must determine whether a Rule 23 settlement class may be conditionally certified. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). And second, the Court considers whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* at 959.

Here, as explained below: (1) the proposed nationwide Settlement Class is fit for conditional approval, and (2) the Settlement is fundamentally fair, adequate, and reasonable.  Thus, the Settlement warrants preliminary approval.

### A.    The Court should conditionally certify a nationwide Settlement Class.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). Here, the Court already granted class certification in this case, certifying a California class, a New York class, and a 26-state multi-state class. Dkt. 118 (Class Certification Order). And, as part of their settlement, the parties have stipulated that a nationwide Settlement Class be certified. Exhibit 1.

The proposed nationwide Settlement Class meets all of the Rule 23 requirements for certification. The Court's reasons supporting certification in its Order apply here. <u>Numerosity</u>: "[T]he numerosity requirement is satisfied" because evidence shows "thousands of sales." Dkt. 118 (Class Certification Order) at 4. <u>Commonality</u>: The "commonality … requirement is met" because "elements of all claims can be resolved classwide." *Id* at 5. <u>Typicality</u>: "Plaintiffs satisfy typicality" because they "have claims and defenses typical" of the class. *Id.* at 9. <u>Adequacy</u>: "[A]dequacy … requirement is satisfied" because "there are no conflicts," members "were exposed to the same

misrepresentations," and "Plaintiffs' attorneys are experienced class action lawyers." *Id*. Superiority: "Plaintiffs have satisfied the requirement[] of … superiority" because "[t]here is very likely no 'significant interest in pursuing individual litigation' regarding" these relatively inexpensive "Products." *Id*. at 15. Predominance: "Plaintiffs have satisfied the requirement[] of predominance" because the "classwide injury" predominates over other issues. *Id*. at 13, 15. Moreover, Plaintiffs assert a nationwide breach of express warranty claim. Dkt. 42 at 30. And, for such claims, "common questions," like whether a "warranty … was breached," "predominate over individual questions." *Czuchaj v. Conair Corp*., No. 13-cv-1901-BEN (RBB), 2015 U.S. Dist. LEXIS 178142, at *12 (S.D. Cal. Nov. 12, 2015) (certifying nationwide breach claim); *Frasco v. Flo Health, Inc*., 349 F.R.D. 557, 586 (N.D. Cal. 2025) (certifying nationwide breach claim because "evidence can answer the various questions posed by this claim on a classwide basis")

Moreover, when, like here, Plaintiffs would represent purchasers from other states, courts routinely certify nationwide Settlement Classes because of the efficiencies it provides, which include, for example, obviating a series of largely identical future lawsuits throughout the country. *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 U.S. Dist. LEXIS 16365, at *15 (N.D. Cal. Jan. 31, 2020) (certifying nationwide settlement class after plaintiffs had brought claims on behalf of purchasers in three states); *see, e.g.*, *In re MacBook Keyboard Litig.*, 2022 U.S. Dist. LEXIS 220247, at *15 (N.D. Cal. Dec. 2, 2022) (certifying nationwide settlement class after plaintiffs had brought claims on behalf of purchasers in seven states). For example, in *McKinney*, a substantially identical case asserted against G.Skill's competitor, Corsair Gaming, Judge Tigar preliminarily certified a nationwide class even though the operative Complaint only asserted California and New York claims. *McKinney*, 2025 U.S. Dist. LEXIS 127576, at *3 (N.D. Cal. July 2, 2025).[1]

In short, the proposed Settlement Class satisfies the requirements of Rules 23 and should be conditionally certified.

---

[1]    Judge Tigar required only that the parties re-file an amended complaint that asserted nationwide claims. *Id*. at *2 ("the parties have agreed to the filing of an amended complaint that includes" the settled nationwide claims). Here, that additional step is unnecessary because the operative Complaint already asserts nationwide claims. Dkt. 42, ¶151 ("Plaintiffs allege this claim individually and on behalf of the proposed Nationwide Class"); ¶159 (same).

1

**B.**     **The Settlement is fair, reasonable, and adequate.**

Preliminary approval of a settlement is appropriate if the settlement (1) "appears to be the product of serious, informed, non-collusive negotiations"; (2) "falls within the range of possible approval"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "has no obvious deficiencies." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). However, a "court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class." *Villafan v. Broadspectrum Downstream Servs.*, 2021 U.S. Dist. LEXIS 249763, at *14 (N.D. Cal. Apr. 8, 2021). Factors in the court's consideration include: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Here, the Settlement meets all the criteria for preliminary approval, and the relevant factors weigh in favor of approval.

**1.**     **The Settlement is the product of serious, informed, non-collusive negotiations.**

To determine if a settlement warrants preliminary approval, a court "first considers the means by which the parties arrived at settlement." *All Consumer & Reseller Actions*, 2016 U.S. Dist. LEXIS 99071, at *639 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*; *see Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). In particular, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).

Here, settlement negotiations were well informed. The Parties were represented by knowledgeable, competent counsel with significant experience with complex litigation and class actions. Lyon Decl. ¶¶4-7, Ex. A; Kneupper Decl. ¶¶2-31. Counsel attended mediations after substantial progress in the litigation (including the completion of class certification proceedings and the substantial completion of discovery) and after extensive analysis of the case (including preparation of expert reports on the underlying technology, consumer confusion, and damages). *See supra* §II(A)-(B); Agreement at 2.

Moreover, counsel enlisted the services of an experienced mediator, Shirish Gupta, to guide settlement discussions. Lyon Decl. ¶¶10-13; Agreement at 2. That the Parties eventually agreed to a mediator's proposal further supports the non-collusive nature of the Settlement. Lyon Decl. ¶13; *see, e.g.*, *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at *25 (N.D. Cal. Mar. 28, 2019) (proposed settlement was "the product of arm's-length bargaining" where it was based on a mediator's proposal); *Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. Nov. 10, 2011) (settlement by means of a mediator's proposal was non-collusive).

The Ninth Circuit has identified "red flags" that may suggest potential collusion. *Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021). These "subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations" include "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (internal quotations omitted).

None are present here. To the contrary, proposed Class Counsel will seek a fee award of 33% of the Settlement Fund—which is in line with Ninth Circuit precedent. *See supra* §II(C)(5). The Parties did not negotiate a clear sailing provision, and Defendants are free to challenge the amount of fees requested by proposed Class Counsel. *See supra* §II(B); Agreement §8.1. And the Settlement is non-reversionary—under no circumstances will any funds revert back to Defendants. *See supra* §II(C)(2); Agreement §2.1(e), (d) (*cy pres* award of the value of any uncashed checks to Khan

1  Academy). The absence of any of these signs of potential collusion further supports preliminary

2  approval.

3          **2.**        **The Settlement falls well within the range of possible approval.**

4        "To determine whether a settlement agreement falls within the range of possible approval,

5  courts evaluate and balance certain factors, including: the strength of the plaintiffs' case; the risk,

6  expense, complexity, and likely duration of further litigation; the risk of maintaining class action

7  status throughout the trial; the amount offered in settlement; the extent of discovery completed and

8  the stage of the proceedings; [and] the experience and views of counsel." *Bakhtiar v. Info. Res., Inc.*,

9  2020 U.S. Dist. LEXIS 258600, at *25 (N.D. Cal. Aug. 4, 2020) (citing *Hanlon* 150 F.3d 1011 at

10  1026). All of these factors weigh in favor of granting preliminary approval here.

11        <u>The strength of plaintiffs' case and the risk of further litigation.</u> "[W]hile plaintiff[s] may have

12  meritorious claims," it remains "far from certain that [they] would have prevailed on those claims or

13  achieved full recovery on each or any of them," which "weighs in favor of … approval of the

14  settlement." *Perez v. CVS Health Corp*., No. 1:19-cv-00449-DAD-BAM, 2021 U.S. Dist. LEXIS

15  110216, at *14 (E.D. Cal. June 11, 2021). G.Skill has developed evidence and arguments that create

16  serious obstacles for the next stages of litigation, presenting a significant risk that class members

17  would not recover anything on their claims. Lyon Decl. ¶23.

18        G.Skill has raised numerous challenges to Plaintiffs' ability to prove classwide reliance and

19  classwide damages. For example, G.Skill argues (with supporting expert evidence) that Plaintiffs

20  (and the class) were not misled at all, and had full knowledge of the need to overclock their RAM to

21  achieve its maximum speed. Dkt. 86-8 (Vaidyanathan Declaration); Dkt. 86-7 (Gervasi Declaration).

22  G.Skill also argues (with supporting expert evidence) that Plaintiffs cannot show individual reliance

23  because of variations in content and wording across the representations made on the challenged

24  products' packaging and online listings, especially since most products were sold by independent

25  resellers. *Id*. G.Skill also contests its liability to Plaintiffs and Class Members, maintaining that its

26  advertising and labeling of its high-speed memory products were lawful. Agreement at 3.

27  Specifically, G.Skill disputes that Plaintiffs will be able to establish deception and materiality—that

28

1    reasonable purchasers understood the meaning of the speed representations on the products. Dkt. 86-

2    8; Dkt. 86-7.

3        At class certification, the Parties presented competing consumer surveys that reached opposite

4    conclusions on the questions of deception and materiality—offering a preview of the major merits

5    disputes that lie ahead in further litigation. *Id.* Though the class certification stage asked only whether

6    deception and materiality were "susceptible to common proof" (not whether deception and

7    materiality had been proved), the Parties would incur further costs and delays in litigating these

8    questions of liability to completion. Resolving liability issues, as well as damages issues, require

9    prolonging the "battle of the experts." *Kumar v. Salov N. Am. Corp.*, 2017 U.S. Dist. LEXIS 105463,

10   at *21 (N.D. Cal. July 7, 2017). And, even in the best-case scenario for Plaintiffs and the Settlement

11   Class, the potential next steps in the case—briefing on "dispositive … motions [such as summary

12   judgment], trial, and appeals"—inevitably entail significant additional time and expenses. *Bakhtiar v.

13   Info. Res., Inc.*, 2020 U.S. Dist. LEXIS 258600, at *26 (N.D. Cal. Aug. 4, 2020); *Nat'l Rural

14   Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations,

15   unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

16   expensive litigation with uncertain results.") (citation omitted).

17       In short, the Parties have negotiated a beneficial and reasonable Settlement, and the "high

18   risk, expense, and complex nature of the case weigh in favor of approving" it. *Larsen v. Trader Joe's

19   Co.*, 2014 U.S. Dist. LEXIS 95538, at *13 (N.D. Cal. July 11, 2014).

20       The amount offered in settlement. The Settlement offers significant monetary and

21   nonmonetary benefits to Class Members. First, the Settlement provides substantial and immediate

22   monetary relief to Class Members. Payments to Class Members who submit valid claims will be

23   based on the number of products they purchased, and will come from the $2,400,000 Settlement

24   Fund. Agreement §§2.1(b), 1.32. After accounting for notice and administration costs (fixed fee of

25   $295,000), attorneys' fees and costs (expected to be $800,000 and $125,000, respectively), and

26   service awards for the two Plaintiffs (expected to be $5,000 each, or $10,000 total), the Parties

27   anticipate that $1,170,000 of the Settlement Fund will be used exclusively to provide monetary

28   benefits to the Settlement Class—an excellent result for Class Members. *See supra* §II(C)(2); Lyon

Decl. ¶17. On top of this, the Settlement also provides substantial non-monetary relief in the form of meaningful changes to Defendants' packaging, website, and content provided to resellers. *See supra* §II(C)(2); Agreement §2.2. These modifications to Defendants' "labeling and advertising of its products nationwide to include … disclaimer[s]" entail "a 'costly process' that benefits the Settlement Class but is not accounted for in the settlement amount." *Smith v. Keurig Green Mt., Inc.*, 2022 U.S. Dist. LEXIS 120863, at *28 (N.D. Cal. July 8, 2022).

The Settlement is also reasonable given Defendants' potential liability at trial, assuming Plaintiffs prevailed. As shown above, the settlement payment Class Members receive may well end up being in line with Plaintiffs' conjoint expert calculation of each class member's price premium overpayment. *See supra* §II(C)(2).

The extent of discovery completed and the stage of the proceedings. It should be evident that "the parties ha[d] sufficient information to make an informed decision about settlement," although "extensive formal discovery … is not a necessary ticket to the bargaining table." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotations omitted).

Here, the Parties did in fact arrive at the Settlement following extensive formal discovery, with both sides serving and preparing initial disclosures, requests for production, and interrogatories, and taking depositions. Lyon Decl. ¶9. Mediation took place after the Parties made significant progress in the litigation (through the substantial completion of fact discovery and after class certification proceedings) and conducted a thorough analysis of the case (including fully briefing Plaintiffs' motion for class certification, which included five expert reports and multiple rounds of supplemental briefing, and a Class Certification Order). *See supra* §II(A)-(B); Agreement at 2.

The experience and views of counsel. "[R]epresentation by competent counsel familiar with the law in the relevant area and with 'the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement.'" *Navarrete v. Sprint United Mgmt. Co.*, 2021 U.S. Dist. LEXIS 40398, at *30 (C.D. Cal. Mar. 2, 2021). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).

1    Here, proposed Class Counsel recommend the Settlement as fair, adequate, and reasonable,

2  and believe that it represents an excellent outcome for the Class. Lyon Decl. ¶¶22-24; Kneupper

3  Decl. ¶36. As explained above, proposed Class Counsel have significant experience in complex

4  litigation, including in consumer class actions. Lyon Decl. ¶¶4-7, Ex. A; Kneupper Decl. ¶¶2-31.

5  Plus, they have devoted substantial time to this case and are therefore well-informed about the

6  strengths and weaknesses of the Parties' respective positions. Lyon Decl. ¶¶8-10; Kneupper Decl.

7  ¶36. Thus, their recommendation of the Settlement weighs in favor of preliminary approval.

8    **3.    The Settlement does not improperly grant preferential treatment to the**

9          **proposed Class Representatives or segments of the Class.**

10    In determining whether to grant preliminary approval, courts consider "whether the proposal

11  'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Perks v.*

12  *ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021); *see* Fed. R. Civ.

13  P. 23(e)(2)(D) (requiring courts to analyze whether "the proposal treats class members equitably

14  relative to each other").

15    Here, the Settlement does not improperly prioritize the named Plaintiffs. Proposed Class

16  Counsel will seek only a reasonable and proportionate service award of $5,000 on behalf of each

17  Plaintiff. *See supra* §II(C)(6). As the Ninth Circuit has explained, service awards are justified "to

18  compensate class representatives for work undertaken on behalf of a class," and are "fairly typical in

19  class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). In

20  the Ninth Circuit, "$5,000 is presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D.

21  326, 335 (N.D. Cal. 2014). Given Plaintiffs' diligence and commitment to the case, as discussed

22  above, the "presumptively reasonable" $5,000 service awards are more than justified. Plus, the

23  Settlement is not contingent on the Court's approval of service awards. Agreement §8.3. This means

24  "the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent

25  class members." *Ahmed v. HSBC Bank USA*, 2019 U.S. Dist. LEXIS 104401, at *34 (C.D. Cal. June

26  21, 2019).

27    Nor does the Settlement improperly favor segments of the Class. Class Members will receive

28  different payments depending on how many G.Skill high-speed memory products they purchased.

Agreement §2.1(b). This manner of distributing benefits ties Class Members' recovery to their potential damages and is an equitable means of allocating the Settlement Fund. *See Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021) ("pro rata distribution is inherently equitable" and "treats Class Members fairly").

### 4. The Settlement has no obvious deficiencies.

As detailed above, the Settlement provides excellent relief to Class Members. In addition, there are no obvious deficiencies.

\*        \*        \*

In sum, the Settlement is fair and merits preliminary approval.

### C. The Court should approve the proposed notice plan.

Under Rule 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Here, the proposed notice plan is the "best notice that is practicable under the circumstances" and should be approved. Fed. R. Civ. P. 23(c)(2)(B); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

The Parties have devised a multi-step notice plan designed to provide all necessary information to Settlement Class Members to enable them to make a well-informed decision about their participation in the Settlement. First, Defendants will provide a Class List identifying Class Members who they can identify after a reasonable investigation, as well as their emails and relevant addresses, to the Settlement Administrator. Agreement §4.1. As discussed above, these Class Members will receive direct notice by email—or by mail, if email notice fails. *See supra* §II(C)(4); Weisbrot Decl. ¶¶16-23.

The direct notices, drafted in plain language, provide all relevant information about the case, the Settlement, and Settlement Class Members' rights. Agreement, Exs. B-C. In particular, the notices provide information about the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, relevant deadlines, and a statement about the release of claims. *Id.* The notices also inform Class Members about their rights to opt out of or object to the Settlement and explain how to do so. *Id.*

In addition to the direct notice to Class Members, the Settlement Administrator will provide publication notice through a robust digital media campaign—including programmatic display advertising (i.e., website banners), social media advertising, video advertising, and search engine marketing. *See supra* §II(C)(4); Weisbrot Decl. ¶¶24-36. The ads will link to the Settlement Website. Agreement §4.2(e).

The Settlement Website will contain substantially similar information as the direct notices about the Settlement, including instructions on how to opt out or object to the Settlement if a Class Member so chooses. Agreement §4.2(c). Through the Settlement Website, Class Members will also be able to file claim forms online, access relevant documents in the case, and review important dates and deadlines. Agreement §§1.34, 4.2(c); Weisbrot Decl. ¶37. The Settlement Administrator will also create a toll-free hotline—that runs 24 hours a day, 7 days a week—devoted to the case. Weisbrot Decl. ¶40.

In light of this comprehensive proposal, the Court should approve the notice plan and appoint Angeion Group as the Settlement Administrator. Angeion has significant experience administering class action settlements and anticipates that the proposed plan will provide the best notice practicable. *Id.* ¶67.

## IV.    Conclusion.

For the foregoing reasons, the Motion should be granted.

Dated: October 31, 2025                    Respectfully submitted,


                                           */s/ Richard Lyon*
                                           Richard Lyon (Cal. Bar No. 229288)
                                           rick@dovel.com
                                           Simon Franzini (Cal. Bar No. 287631)
                                           simon@dovel.com
                                           Jonas Jacobson (Cal. Bar No. 269912)
                                           jonas@dovel.com
                                           DOVEL & LUNER, LLP
                                           201 Santa Monica Blvd., Suite 600
                                           Santa Monica, California 90401
                                           Telephone: (310) 656-7066
                                           Facsimile: +1 (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Counsel for Plaintiffs and the Proposed Class*

### **Certification of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,497 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 31, 2025                    By: */s/ Richard Lyon*

Richard Lyon